ROBERT WICKLIFFE, APPELLANT, *v.* THOMAS D. OWINGS.

Where a bill in chancery avers that the defendant is a citizen of another State, this averment can only be impugned in a special plea to the jurisdiction of the court. The answer is not the proper place for it, under the 33d rule of equity prac'..e, established by this court.

The plea of the defendant, that he had instituted a suit against the complainant in a state court, in the same controversy, prior to the institution of this one in the circuit court of the United States, is not sustained by the evidence; nor is the allegation that the title of the complainant is invalid.

Upon a bill filed, under a statute of Kentucky, by a person having both the legal title to, and the possession of, land, against a person setting up a claim thereto, for the purpose of quieting the title, this court decides that the complainant is entitled to relief, and proceeds to render such decree as the circuit court ought to have rendered.

THIS was an appeal from the circuit court of the United States for the district of Kentucky, sitting as a court of equity.

It was a bill filed by Wickliffe, under a statute of Kentucky, to quiet the title to sundry tracts of land of which the complainant was in possession, and to which he alleged that he had the legal title. Owings, it was averred, had removed to Texas, and become a citizen of that State; but had visited Kentucky, and set up a claim to the lands, threatening to institute suits against the complainant.

Owings, in his answer, denied the jurisdiction of the court, upon the ground that he was not a citizen of Texas; denied that the complainant had any title to the land, or, that if he had one, asserted that it was obtained by fraud; and alleged, that prior to the institu. 'n of this suit, he, himself, had filed a bill against Wickliffe, in the Bath circuit court of Kentucky, and relied on the priority of his bill in bar of Wickliffe's suit.

The district judge, who tried the cause in the court below, dismissed the bill, from which decree Wickliffe appealed to this court.

It was argued for the appellant by *Mr. Preston*, and a brief was also filed upon the same side by *Mr. Charles A. Wickliffe*. No counsel appeared for the appellee.

The arguments consisted chiefly in examinations of the testimony respecting the citizenship of Owings, in Texas, and of the various muniments of the title of Wickliffe to the lands; and also of a comparison of the dates of the institution of the respective suits in the state court and in the circuit court of the United States. As these involved no general principles of law, it is unnecessary to introduce them into the report of the case.

Mr. Justice CAMPBELL delivered the opinion of the court. The plaintiff filed his bill in the circuit court of the United

States for Kentucky, against Thomas Deye Owings, by which he assumes to be the owner, and in the lawful possession, of a number of tracts of land, lying in different counties of that State, which had at one time been the property of the defendant, but of which he had been legally divested, and notwithstanding claims, by the instigation and advice of other persons, to the prejudice and vexation of the plaintiff. The object of the bill is to establish the title and to quiet the possession of the plaintiff.

The facts disclosed by the record are : that, in the years 1817 and 1818, the defendant was possessed of a very large estate in lands, but was indebted beyond his means of payment. During those years, two of his creditors (Luke Tiernan and Samuel Smith) respectively recovered, in the circuit court of the United States for Kentucky, judgments for the aggregate sum of twenty-five thousand dollars and upwards ; the one by default, the other by confession. Immediately thereafter, the defendant adopted a system of legal proceedings, to postpone the day of payment of those judgments, which terminated in the augmentation of the debt, and the introduction of other persons, in the character of sureties, to share in the entanglements of the debtor. By the interposition of injunctions, replevin, and stay bonds, and for the want of bidders at execution sales, the defendant withstood his creditors until 1824.

In November, 1824, Tiernan purchased a number of the tracts in dispute, and others in 1827 and 1834, under the executions, and for which he has the deeds of the marshal.

In 1820, Samuel Smith assigned his judgment to Ellicott and Meredith, in trust for creditors, and these persons, between 1826 and 1829, purchased nearly, if not all, of the tracts for which Tiernan had acquired a title.

In 1824, before any of these sales, Owings had conveyed the lands to the sureties whom he had involved upon the bonds before referred to in these and other cases, for their indemnity, and delivered to them the possession of the property, and ceased to have any control of it. He gave to them authority to " sell, dispose of, and convey any of the estate, whenever it might be necessary for their protection," and in such cases as a majority of them might consider as most beneficial to all concerned, in case their principal was in default. Tiernan, and Meredith and Ellicott, in 1827, commenced suits for various parcels of the lands they had purchased at the marshal's sales, in the circuit court of the United States, and recovered judgments. The questions involved in the issues, appear to be the regularity of the sales by which they acquired title. In 1829, after a portion of these trials, the sureties and assignees of Owings executed a deed to Ellicott and Meredith, for the tracts of land described in

the bill, upon "a general compromise" with them, by which the debt to Samuel Smith, with the various bonds taken to secure it, were surrendered to be cancelled. The record shows that Owings was advised of this settlement, and expressed approbation of it. Some time after this settlement with the assignees of Owings, an arrangement was concluded between Tiernan, Ellicott, and Meredith, and the Bank of the United States, by which the bank agreed to reimburse Tiernan for his debt and advances, and to cancel an indebtedness of Smith, and to take the title to the property they had acquired by these proceedings. This arrangement was carried into effect by a suit in the circuit court of the United States, in which a sale was ordered, at which, in 1834 and 1835, the bank became the purchaser.

In 1836, the bank sold its title to the plaintiff in this suit. In order to free the title from any imperfections, a bill was filed in the circuit court of Bath county, Kentucky; and in that suit, the titles of Tiernan, Ellicott, and Meredith, and the bank, were, in 1848, conveyed to him.

In the course of these proceedings, a number of confirmatory deeds were taken from purchasers of portions of the property at the marshal's sales, which it is unimportant to describe. To appreciate fully the case of the plaintiff, it is proper to notice a transaction between him and Mr. Bascom, the son-in-law and attorney in fact of Owings, in 1837. The plaintiff, after the acquisition of his titles from the bank, instituted suits for the recovery of the family residence and other lands of the defendant, in the courts of Kentucky. At the trial term of these suits, a proposal for an adjustment was submitted to the plaintiff, by Mr. Bascom, (under the advice of counsel,) which was accepted by him. He agreed to convey to Mrs. Bascom the family residence and other lots, a balance due on the judgment of Tiernan, to release the claim for *mesne* profits, and to dismiss the suits pending, each party to pay costs. Owings and Bascom were to confirm the title acquired by the plaintiff, to the lands described in the bill. This settlement was executed by the delivery of the proper evidences of title. Those in the name of Owings were executed by Bascom, as his attorney in fact.

The land conveyed to Mrs. Bascom has remained in the family till this time, and in 1847 was divided among the children of Owings, in a suit to which he was a party. The validity of the conveyance of Wickliffe to her, was asserted in that suit, and admitted in the decree of the court, as the basis upon which it was founded. Owings, in 1836 or 1837, left the United States for Texas; during the interval, from 1837 to 1849, the plaintiff was in the open possession of the property. Before the departure of Owings, the plaintiff had offered to reconvey to him the

whole of his purchases, upon an extended credit and a reduced rate of interest, for the consideration of the debts and costs they represented; which proposal Owings acknowledged his inability to accept, and fulfil the obligations he would thus incur. In 1849, he was induced to return to the United States, and to renew the controversy which had been so long pending, by the assertion of pretensions hostile to the title of the plaintiff, and prejudicial to his useful and peaceful enjoyment.

The evidence shows that the lands are in the possession of the plaintiff, occupied by a numerous body of tenantry; that sales have been obstructed and rents diminished by the assertion of these claims.

The right of the plaintiff to relief is rested upon the general principles of equity, as well as a statute of Kentucky, to the effect " that any person having both the legal title to, and the possession of land, may institute a suit against any other person setting up a claim thereto, and if the complainant shall establish his title the defendant shall be decreed to release his claim." 1 Bro. and More, Stat. 294.

The jurisdiction of a court of chancery to grant perpetual injunctions for quieting inheritances, after the right and matter in question has been fairly settled by concurring verdicts, has been long established; and, in addition to this general ground for equitable interference, this case presents a strong claim for the interposition of the court, arising from the settlement between Bascom, as the attorney in fact of the defendant, and the plaintiff. The consideration of that settlement has been enjoyed for many years, by the family of Owings. We conclude that this arrangement, embracing the fact that a confirmatory deed to the plaintiff had been executed in his name, under the letter of attorney to Bascom, was communicated to him, and that it received his approbation. If additional assurances were, therefore, required to perfect the title of the plaintiff, and to maintain his quiet enjoyment, it is the duty of the court to exact them.

But if a question might arise upon the facts of this case, upon this branch of it, there will be none when we connect it with the statute of Kentucky:

" When the nature of our conflicting titles," says the supreme court of that State, " whether derived from the laws of Virginia or of this State, are considered, there is an apparent necessity of permitting the holder of the legal estate to call his adversary to the test when it cannot be otherwise reached. This act ought to be liberally expounded as a remedial statute." Cates v. Loftus, 4 Mon. 439.

And in accordance with this view, that court decreed a release to one, having the legal title and possession from one who " pre-

tended a claim under a vague and void entry, without equity." 1 Mon. 97.

And in another case, where the party in possession with title averred " that the defendants pretended to have a claim upon it, and thereby disparaged his title, and obstructed him in the full enjoyment of his property." Armitage v. Wickliffe, 12 B. Mon. 488.

This statute is too important a portion of the law of property in Kentucky, to be disregarded in the exercise of the equitable powers of the courts of the United States in that State; and without affirming that it can be so fully applied under the constitution of those courts as by the State tribunals, we are satisfied that its protection may be properly invoked in cases like the present. Clark. v. Smith, 13 Pet. 195. The statement of the plaintiff's title shows that the lands described in his bill were sold as the property of the defendant, by a public officer, with legal process, issued upon valid judgments, and that the title of the purchasers have vested in him; that this title has been submitted to a court of law, and maintained in a succession of trials; that besides, the sureties who were bound for these judgments, and to whom the lands were delivered by the defendant for their indemnity, with powers to use them for that purpose, have transferred them, to relieve themselves and their principal, to the grantors of the plaintiff; that, in addition, the son-in-law, agent, and attorney of the defendant, to preserve a portion of his estate for his family, has confirmed in his name the title of the plaintiff, as we are bound to believe, with the knowledge and acquiescence of his principal, and that family still retains the consideration of this deed; finally, that the plaintiff, and those whose title he has, has been in possession since 1824.

The defendant resists the suit of the plaintiff for relief, by a denial, in his answer, of the averment that he is a citizen of Texas, and consequently the jurisdiction of the court. 2. By the plea that before this suit was commenced he had instituted one in the circuit court of Bath, Kentucky, contesting the plaintiff's title and provoking a full investigation into its validity, and that he could not be restrained from its prosecution there. 3. That the sales by the marshal were invalid, and that the conveyance executed by Bascom in his name to the plaintiff is void, for misrepresentation, fraud, and the want of consideration.

The doctrine of this court is settled, that when the jurisdiction of the circuit court appears, by proper averments, on the record, the defendant can only impugn it in a special plea. The 39th rule of practice for courts of equity in the United States, adopted by this court, excludes " matters of abatement, objections to the character of parties and to matters of form," from the answer,

and confines its operation to " matters in bar, or to the merits of the bill." It is proper to say, that if the fact of citizenship was open to inquiry, the evidence sustains the allegation of the bill.

2. Whether we consider the commencement of the suit as dependent upon the filing of the bill with the clerk of the court, or the issue, service, or return of process upon it, there is no sanction in the evidence for the plea by the defendant of a prior suit pending in the circuit court of Bath county. The plaintiff's bill was filed and process issued before that of the defendant was entered, and the process from the court of the United States was executed more than a year before the service of a subpœna to answer, on the plaintiff. Nor are the imputations of fraud, oppression, and injustice, upon the conduct of the plaintiff, nor the charges that he acquired his titles by corrupt and champertous contracts, better supported. No evidence has been taken which authorizes the crimination of the plaintiff by such allegations, in any part of the complicated and involved controversies which he seeks by this bill to close.

Our conclusion is, that the plaintiff is entitled to the relief he asks for, and that the decree of the circuit court must be reversed, and a decree entered here conformable to this opinion.

### *Order.*

This cause came on to be heard, on the transcript of the record, from the circuit court of the United States for the district of Kentucky, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby, reversed and annulled.

And this court, proceeding to render such decree as the said circuit court ought to have rendered, doth order, adjudge, and decree, that the complainant has shown a legal title to all those tracts or parcels of land which are described and set forth in the two deeds in the record, executed by Owings and Bascom, dated 6th April, 1837, and marked No. 54, and by A. Trombo, commissioner, dated 25th day of September, 1848, and marked No. 58, in both of which the said complainant is the grantee, but excepting from this decree the lands which were conveyed to Mary N. Bascomb, by the said complainant, the 6th April, 1837, and as to which this decree has no application.

And it is further ordered, adjudged, and decreed by this court, that the said complainant has shown sufficien matter of equity to entitle him to a release, by Thomas D. Owi gs, or his heirs at law or devisees, or other legal representatives, of all their claim, and to be quieted in the possession and enjoyment of the said parcels of land.

And it is further ordered, adjudged, and decreed, that the said complainant do recover his costs in this cause in this court, of and from the said defendant.

It is therefore further ordered, adjudged, and decreed, by this court, that this cause be and the same is hereby, remanded to the said circuit court, with instructions to cause an appropriate deed of release and quitclaim to be prepared and executed by the said defendant, or his heirs at law or devisees, or other legal representatives of their rights, as aforesaid, and also that the said court issue an injunction to them commanding their agents, and attorneys, aiders and abettors, to refrain perpetually, from any molestation or disturbance of the right and possession of the said complainant, under any title of the said Thomas D. Owings, and that the said circuit court do execute and carry into effect all the provisions of the aforesaid decree of this court.