DESERT KING MIN. CO. v. WEDEKIND et al.

(Circuit Court, D. Nevada. September 2, 1901.)

No. 715.

1. EQUITY PLEADING—OBJECTION TO JURISDICTION.

An objection to the jurisdiction of the court for any reason not apparent on the face of the bill must be taken by special plea, and cannot be raised by a motion.

2. FORMER ADJUDICATION—PLEADING.

A motion to dismiss is not a proper mode of raising the defense of former adjudication, but it should be presented either by a plea in bar or by evidence under the general issue taken by answer; and where such defense involves disputed questions of fact the court will not undertake to determine it on such a motion.

In Equity. On motions to vacate and set aside an order to show cause, to dissolve the temporary restraining order issued herein, and to dismiss the bill of complaint.

J. W. Dorsey, A. E. Cheney, and Thos. Wren, for the motions.
W. E. F. Deal, opposed.

HAWLEY, District Judge (orally). The bill of complaint in this case was filed August 10, 1901. It contains the necessary averments to give this court jurisdiction. The complainant is a California corporation, organized and existing under the laws of that state since May 14, 1901. The defendants are residents of the state of Nevada, and the amount involved exceeds $10,000. It alleges that complainant—

"Is now, and ever since the 22d day of June, 1901, has been, the owner in fee simple, in the possession and entitled to the possession, of all that certain piece or parcel of land situate, lying, and being in the county of Washoe, state of Nevada, described as follows, to wit: All that portion of the northeast one-quarter of section thirty-two [then describes the same by metes and bounds, containing 60.30 acres], together with the surface of said tract of land, and all lodes, ledges, minerals, and deposits of * * * gold and silver and other metals therein contained beneath the surface of said tract of land within the exterior surface boundaries thereof extended downward vertically indefinitely and from said surface to the center of the earth; * * * that it and its predecessors in interest and grantors have so owned, been in the possession of and entitled to the possession of said above-described premises and property for twenty years last past by title in fee simple, under and by virtue of letters patent issued by the government of the United States of America to the said predecessors in interest and grantors of your orator; * * * that said defendants, then and each of their agents, servants, and employés, notwithstanding your orator's ownership of the said land and premises, and of the gold and silver bearing rock, earth, and ore contained therein, and notwithstanding the exclusive right of your orator to the sole and exclusive possession of said land, and of the sole and exclusive right to said earth, rock, and ore, and to all of said precious metals contained therein, heretofore, to wit, on or about the 22d day of June, 1901, by digging in the earth outside of the boundary lines of your orator's said land, have made mining constructions by means of which they have excavated and dug under the surface of the land of your orator, and within the exterior boundaries of said land at the surface extended downward vertically, and have been digging and extracting large and valuable quantities of said earth, rock, and ore, containing gold and silver, from under the surface of your orator's said land, and within said exterior boundary lines at the surface extended downward vertically, and are still so digging, extracting, and carrying away large quantities of such rock, earth and ore, and are converting the same, and the gold and silver therein contained, to the use of said defendants; that said defendants have already dug, taken, and carried away ores, earth, and rock, bearing gold and silver, of the value of not less than ten thousand dollars, the exclusive property of your orator; * * * that said defendants threaten to continue said unlawful and illegal acts, and * * * will, unless enjoined and restrained by the injunction of this honorable court, continue their said unlawful, wrongful, and illegal acts," etc.

On the day the bill was filed an order was made requiring the defendants to be and appear before this court on the 5th day of September, 1901, then and there to show cause, if any they could, why a temporary injunction should not issue, and in the meantime a restraining order was issued against them; and on the 14th day of August, 1901, complainant moved for an order for leave to make a survey of the premises in order to obtain the necessary facts to present the case on the day set for the hearing of the rule to show cause. Thereafter, on the 22d day of August, 1901, after notice to

the complainant, the defendants moved the court to vacate the order to show cause, to dissolve the restraining order, and to dismiss the bill of complaint, upon the grounds (1) that this court had no jurisdiction to make the order to show cause or to issue the writ of injunction, (2) that the whole subject-matter of the suit is res judicata, and (3) that all of the matters and things, and the title to all of the property and premises, set forth in and which constitute the subject-matter of this suit, had been fully and finally adjudicated and determined in and by a court of competent jurisdiction, namely, the state district court in and for Washoe county, Nev., long prior to the time of the commencement of this suit, and that the subject-matter of the suit in the state court "is the same identical subject-matter of this suit." Other grounds were embodied in the motions, but these are the only ones that require special notice.

The affidavits and documentary exhibits offered by the respective parties upon these motions, among other things, show that on April 15, 1901, George H. Wedekind, one of the defendants herein, filed a complaint in the district court of Washoe county, Nev., against C. B. Bell, W. A. Sleep, John Doe, Richard Roe, James Noe, and Samuel Styles. The names of all of said persons except Bell and Sleep being fictitious, and their true names were asked to be inserted as defendants when ascertained. They were never ascertained, and the case came to issue and was tried upon an answer filed by defendants Bell and Sleep alone. The complaint was in the ordinary form of an action in ejectment, with a second count praying for the issuance of an injunction. It alleged that the plaintiff on April 10, 1901, was, ever since had been, and then was the owner and entitled to the possession of certain mines, mining claims, and premises "commencing at a post which is situated 750 feet northwesterly from that certain post and monument situate about 50 feet northeasterly from the corner which is common to sections 28, 29, 32, and 33 of township 20," and then by metes and bounds describes a mining claim 1,500 feet in length and 600 feet wide, "together with all veins, lodes, ledges, and deposits throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, ledges, or deposits may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of said mine, mining claim, and premises. And plaintiff further avers that in said premises there is a certain vein, lode, ledge, or deposit of rock in place bearing gold, silver, and other valuable minerals, the top and apex of which lies within the premises above described, which said vein, lode, ledge, or deposit on its downward course extends into the ground and premises hereinafter described beneath the surface thereof; that on or about the 10th day of April, 1901, and while said plaintiff was the owner, in the possession, and entitled to the possession of said vein, * * * the said defendants wrongfully and unlawfully entered in and upon the said vein, lode, ledge, or deposit, beneath the surface, at a point about 200 feet south from said corner common to said sections 28, 29, 32, and 33," and wrongfully and unlawfully dug up, excavated, mined, and removed out of and from

"said vein, lode, ledge, or deposit a large portion of the earth and rock in place bearing gold, silver, and other valuable minerals, and wrongfully and unlawfully ousted and ejected said plaintiff from the possession of all that portion of said vein, lode, ledge, or deposit which lies within the exterior boundary lines of said section 32 extended vertically down, and which said defendants have entered and possessed, * * * and ever since said day have, and now do, wrongfully and unlawfully withhold the possession thereof from the plaintiff"; that the cause came regularly for hearing before Judge Curler, the regularly elected district judge of the Second judicial district court, upon an application for the issuance of a temporary injunction. The hearing was regularly had, and after hearing said judge on the 8th day of May, 1901, denied the same. Thereafter and in due course of time the cause came up for trial before the Honorable George F. Talbot, district judge of the Fourth judicial district, sitting in the place of Judge Curler, who was absent from the state; and after due hearing and regular trial the said judge, on the 25th day of July, 1901, after describing the premises in controversy mentioned in the bill of complaint, entered the following judgment and decree:

"Now, therefore, the law and the premises considered, it is hereby ordered, adjudged, and decreed: (1) That plaintiff is, and ever since the 10th day of April, 1901, has been, the owner and entitled to the full and undisturbed possession of the mining ground and premises hereinbefore described, and of all veins, lodes, ledges, and deposits apexing therein down to their uttermost depths. (2) That said defendants have not, nor has any of them ever had, any right, title, estate, or interest of, in, or to said above-described mining claim or premises, or any part thereof, or of, in, or to the veins, lodes, ledges, or deposits apexing therein, or any part thereof, and particularly of, in, or to that certain vein, lode, ledge, or deposit in and upon which said defendants have sunk shafts and made drifts and excavations, and from which they have dug and extracted ore, as hereinbefore stated, or any part thereof. (3) That said plaintiff do have and recover of and from the said defendants, and each of them, the possession of said mining claim and premises, and leads, lodes, ledges, and deposits, and every portion thereof, and especially that portion of said vein, lead, lode, ledge, or deposit in and upon which said defendants entered by means of shafts, drifts and excavations as aforesaid. (4) That said defendants and each of them, and their servants, agents, and employés, and all persons deriving or claiming title from, through, or under said defendants, or any of them, or acting for, in aid or assistance of, them or any of them, are hereby perpetually enjoined and restrained, all and each of them, from entering into or upon, or in any manner interfering with, said or any of said veins, leads, lodes, ledges, or deposits, and particularly any portion of said vein, lead, lode, ledge, or deposit in and upon which said defendants entered by means of shafts, drifts, and excavations as aforesaid, and from digging, breaking down, or removing any portion of said particularly referred-to vein, lode, ledge, or deposit, or any of said veins, leads, lodes, ledges, or deposits, or from in any manner hindering, preventing, or obstructing said plaintiff from the full and free use, possession, and enjoyment of the same and every part thereof. It is further ordered, adjudged, and decreed that defendants are the owners and entitled to the possession of all lands, ores, mineral, and mineral-bearing rock in that portion of section 32 which is within the exterior boundary lines of the Safeguard location (described hereinbefore), excepting such as may be in lodes or veins apexing outside of section 32 on the Safeguard location, and defendants are not enjoined from working said portion of section 32 within the Safeguard location, except upon said ledge heretofore referred to, and all other ledges apexing

outside of section 32; that plaintiff have and recover of and from said defendants his costs and disbursements herein incurred, taxed at the sum of $———. Done in open court this 25th day of July, A. D. 1901. G. F. Talbot, District Judge."

It is also alleged that on August 13, 1901, within the time allowed by law, the defendants in that suit filed their notice of intention to move for a new trial therein, accompanied by a statement on motion for a new trial.

In the consideration of the points relied upon by defendants, it must be remembered that they have not interposed any plea to the jurisdiction of the court, or in bar, or to the merits, or made any general appearance in the present suit. Counsel expressly state that:

"The filing of this notice and the making of said motions is intended, and shall be only construed, to be and constitute a special appearance for the purpose of said notice and motions, and nothing more."

An objection to the jurisdiction of the court, for any cause not apparent on the face of the bill, must be taken by special plea. It is only in cases where the want of jurisdiction affirmatively appears upon the face of the complaint that it can be raised by motion. Wood v. Mann, 1 Sumn. 578, Fed. Cas. No. 17,952; Evans v. Davenport, 4 McLean, 574, Fed. Cas. No. 4,558; Smith v. Kernochan, 7 How. 198, 216, 12 L. Ed. 666; Wickliffe v. Owings, 17 How. 47, 51, 15 L. Ed. 44; Jones v. League, 18 How. 76, 81, 15 L. Ed. 263; Eberly v. Moore, 24 How. 147, 158, 16 L. Ed. 612; Hartog v. Memory, 116 U. S. 588, 590, 6 Sup. Ct. 521, 29 L. Ed. 725; Railway Co. v. Pinkney, 149 U. S. 194, 199, 13 Sup. Ct. 859, 37 L. Ed. 699; Walker v. Flint (C. C.) 7 Fed. 435; Dinsmore v. Railroad Co. (C. C.) 19 Fed. 153; Refining Co. v. Wyman, 38 Fed. 574, 3 L. R. A. 503; Pierce v. Feagans (C. C.) 39 Fed. 587, 588. It is equally as well settled that a motion to dismiss is not a proper mode of raising the defense of former adjudication. It should be presented either by a plea in bar, or by evidence introduced under the general issue in an answer. 9 Enc. Pl. & Prac. 612, 613, and authorities there cited.

It is claimed by the moving party herein that the facts set forth in the motions show that in the present suit the complainant is relying upon the same muniments of title as were set up by defendants Bell and Sleep in their answer to the Wedekind suit in the state court, it having derived its title from them during the pendency of said action, and that the corporation complainant herein had full notice and knowledge of the facts prior to its purchase, and became a party privy to said suit, and is as much bound by the judgment and decree in the state court as the parties named therein. It will be time enough to decide these questions and the effect of them when the issue is raised in proper form and in the regular manner as prescribed or required by the rules and practice of this court.

There is another reason why this court should refuse to discuss these or other questions urged upon these motions. The complaint in this suit is general in its averments concerning complainant's ownership of the mineral deposits beneath the surface of its land in section 32, and its right to extract the same. The decree of the

state court is limited. It does not enjoin the grantors of complainant from digging upon or extracting from the land.in section 32 the minerals found in any lode or deposit of earth and ore therein which does not have its apex within the exterior boundary of the Safeguard location. The decree expressly declares that:

"Defendants are not enjoined from working said portion of section 32 within the Safeguard location, except upon said ledge heretofore referred to, and all other ledges apexing outside of section 32."

How can this court, upon these motions, determine that the alleged extraction of ores and minerals by defendants from section 32 is upon a lode or deposit which has its apex within the surface boundaries of the Safeguard location? It is true that defendants argued, and the affidavits of Wedekind and Sparks offered in their behalf state, that neither of them, "nor any one employed by or acting for them or either of them, has or have entered upon or within the boundaries of section 32, township 20 north, of range 20 east, except on the dip of, and in following, and within the limits of, said particular vein or deposit described in and adjudged to belong to affiant by said judgment and decree hereto annexed, * * * nor does this affiant or said Sparks claim any right to enter beneath the surface of or within the boundaries of said section 32, save in following and within the limits of said vein or deposit, or in following some other vein adjudged by said judgment and decree to belong to affiant, and not to belong to the defendants in said action." But, on the other hand, the affidavits of Thomas Dougherty, the duly-authorized agent of complainant in the state of Nevada, and of C. B. Bell, a director, state upon information and belief—

"The fact to be that the ore mentioned in said bill of complaint has not been taken from any ledge or deposit of ore whose top or apex is within the boundaries of defendants' land, or either of said locations, but that the top or apex of said ledge or deposit of ore is entirely within the exterior boundary lines of complainant's land, described in said bill of complaint, at the surface extended downward vertically; * * * that he is not able to state the fact as to said apex positively, because and for the reason that said defendants will not permit said complainant, or any of its officers or agents, or either of these affiants, or L. F. J. Wrinkle, to survey or examine the underground workings by means of which the defendants in this cause have extracted said ore, and the fact can only be determined by such examination; * * * that the acts and doings of said defendants, alleged in said bill of complaint, are contrary to and against the said decree of said Second judicial district court of the state of Nevada, set forth in said defendants' moving papers."

Is not complainant entitled to a hearing in this matter? In this respect it certainly cannot legally be said that complainant, or this court, is interfering in any manner with the jurisdiction of the state court, or with its decree. If it should hereafter affirmatively appear in proper proceedings had herein that the acts of the defendants in digging or removing the ore from section 32 were committed by them upon the identical lode, deposit of ore, or mining ground decreed by the state court to belong to the defendants, it will then be the duty of this court to decide, under the facts and the law applicable thereto, whether it should "stay its hand" or proceed with the hearing and trial of the case.

It was agreed between the respective counsel that the question as to the right of complainant to have a survey of the premises in dispute and the hearing of the rule to show cause why a temporary injunction should not issue should be postponed until after the decision upon these motions, and the rights of the respective parties in relation thereto are not in any manner affected by this decision. The motions made by defendants are hereby denied.