### BETTES v. BROWER.

(District Court, E. D. Oklahoma. January 6, 1911.)

No. 1,101.

*(Syllabus by the Court.)*

1. ABATEMENT AND REVIVAL (§ 3*)—UNITED STATES COURTS—JURISDICTION—AMOUNT IN CONTROVERSY—METHOD OF RAISING QUESTION.

   In a suit in equity, the question of the jurisdictional amount involved should be raised by special plea rather than in the answer. And where the question is raised by denials in the answer, the cause will not be dismissed for want of jurisdiction unless evidence is sufficient to create a legal certainty against the jurisdiction.

   [Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 7–24; Dec. Dig. § 3.*]

2. INJUNCTION (§ 52*)—CUTTING GROWING TREES—INSOLVENCY.

   Where a suit is brought to restrain the cutting and removal of growing trees, a court of equity will take jurisdiction regardless of the question of the insolvency of the defendant.

   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 105; Dec. Dig. § 52.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. EVIDENCE (§ 15*)—JUDICIAL NOTICE—DEGREE OF INDIAN BLOOD OF CITIZEN OF FIVE CIVILIZED TRIBES.

A federal court will not take judicial notice of the degree of Indian blood of a citizen of the Five Civilized Tribes; and will not presume, in the absence of proof, that such citizen was of such degree of Indian blood as to render his lands inalienable under existing acts of Congress.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 15.*]

4. GUARDIAN AND WARD (§ 44*) — POWER OF GUARDIAN TO LEASE WARD'S LAND.

Under sections 5489 and 5491, of Snyder's Laws of Oklahoma 1909, a guardian may lease the land of his ward for agricultural purposes for a term of years not exceeding the minority of the ward without an order of the probate court.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 192–195; Dec. Dig. § 44.*]

5. GUARDIAN AND WARD (§ 44*)—POWER OF GUARDIAN TO LEASE WARD'S LAND.

While standing timber is a part of the realty, yet a guardian may lease the land of his ward for agricultural purposes, without the order or approval of the probate court, where such land is well adapted to cultivation, with the right in the lessee to cut and remove the standing timber therefrom, that being merely incident to the lease.

[Ed. Note.— For other cases, see Guardian and Ward, Cent. Dig. §§ 192–195; Dec. Dig. § 44.*]

6. GUARDIAN AND WARD (§ 42*)—SALE OF WARD'S STANDING TIMBER—VALIDITY OF DEED.

Standing timber is a part of the realty, and an instrument executed by a guardian without the order and approval of the probate court, the sole purpose of which is the granting and selling the growing timber of his ward's land, is void under sections 3502 to 3511 of Mansfield's Digest of the state of Arkansas (Ind. T. Ann. St. 1899, §§ 2398–2407).

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. § 175; Dec. Dig. § 42.*]

7. GUARDIAN AND WARD (§ 42*)—SALE OF WARD'S STANDING TIMBER—VALIDITY OF CONVEYANCE.

In a bill of sale by guardian of timber growing on his ward's land, an arbitrary declaration in the timber bill of sale that the growing timber shall be considered personal property, will not be given effect.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 182, 184; Dec. Dig. § 42.*]

In Equity. Bill by Joseph M. Bettes against J. M. Brower. Decree for complainant.

Ramsey & Thomas, for complainant.
Robert Crockett and A. H. Ferguson, for defendant.

CAMPBELL, District Judge. In this case the complainant, a citizen of Texas, claims the right to cut and sell certain timber standing upon lands which he holds under certain leases executed to him by the guardians of certain minors, owners of respective portions of the land. He alleges in his bill that the defendant, a citizen and resident of this district, with notice of his rights under the said leases and in violation thereof, and without license or authority, has entered upon the land and is cutting and removing the said timber therefrom, and threatening to and will continue to trespass upon said land and cut, destroy, and remove the timber growing thereon, unless enjoined from

doing so, to the complainant's great and irreparable injury and damage. He further alleges that the matter and amount in dispute in this case, exclusive of interest and costs, exceeds the sum of $2,000, and "that the value of the said wood, trees, and timber growing and being upon said land exceeds the sum of $2,500." In his answer the defendant denies that the matters and amount of money in dispute in this case, exclusive of interest and costs, exceeds the sum of $2,000, but says that the same is less than the said sum of $2,000, and that therefore this court is without jurisdiction to try this cause. He further pleads certain bills of sale from the guardians of said minors, under which he claims the right to cut and remove the timber in controversy, and denies the right of the complainant to such timber under the leases pleaded by him. Upon issue joined, the parties have taken proof upon the various branches of the case, and it is now submitted to the court for decree. No plea to the jurisdiction was filed. The defendant answered and in his answer denied the jurisdictional amount. In Street's Federal Equity Practice, p. 210, § 365, it is said:

"Before a suit containing proper jurisdictional averments will be dismissed for lack of jurisdiction on the facts shown by the whole record, those facts must create a legal certainty against the jurisdiction; and every reasonable intendment will be made in favor of the jurisdiction, specially where a plea is not separately put in on the question of jurisdiction."

In Wickiffe v. Owings, 17 How. 47, 15 L. Ed. 44, it is said:

"The doctrine of this court is settled that when 'the jurisdiction of the Circuit Court appears by proper averments on the record, the defendant can only impugn it in a special plea. The thirty-ninth rule of practice for courts of equity in the United States, adopted by this court, excludes matters of abatement, objections to the character of parties, and to matters of form from the answer, and confines its operation to matters in bar, or to the merits of the bill."

In Stockyards Company v. L. & N. R. Co., 67 Fed. 35, 14 C. C. A. 290, Judge Taft, speaking for the court, said:

"We think a liberal consideration of the bill must be given in order to sustain the jurisdiction of the court at this time, in view of the fact that no plea to the jurisdiction was made below, and no question of the jurisdiction seems there to have been raised. But it is said that the averment of the jurisdictional amount is denied by the answer and is not sustained by the proof."

He then cites Wickiffe v. Owings, supra, and proceeds:

"By pleading to the merits, the defendant admits the averments in the bill, which state facts sufficient to establish the jurisdiction of the court. * * * The objection to the jurisdiction of the Circuit Court, therefore, is not sustained."

This being an equity cause, the defendant should have raised this jurisdictional question by special plea, rather than in the answer. The evidence in the record is not sufficient to create a legal certainty against the jurisdiction, and the cause will not therefore be dismissed on that ground. If this were an action at law, a different rule might apply.

It is contended by the defendant that the complainant's case is without equity, and that he has an adequate remedy at law. In Big Six

Development Co. v. Mitchell (8th Circuit) 138 Fed. 279, 70 C. C. A. 569, 1 L. R. A. (N. S.) 332, it is said:

"The trespass here complained of as disclosed by the record is not an ordinary case of trespass upon lands of temporary duration, but, as we think, the evidence shows was a continuous trespass which threatened to destroy the character of the property as a mine, and would render the plaintiff's interest therein valueless. Threatened and continuous injuries to mines, quarries, timber growing upon lands, buildings located thereon, or other improvements of a permanent character, are enjoined because, as has been said, such acts alter the character of the property, and also tend to destroy it and occasion irreparable loss and damage. * * * If the only relief sought by the bill in this case was to remove the cloud upon plaintiff's title, it might be well doubted whether the bill could be sustained, * * * but the bill goes further and seeks to enjoin the defendant from committing waste and destroying the property as a mining property. In such a case, jurisdiction in equity attaches, even where the plaintiff is not in possession."

In Oolagah Coal Co. v. McCaleb (8th Circuit) 68 Fed. 86, 15 C. C. A. 270, Judge Thayer speaking for the court said:

"It is now well settled by many adjudications, beginning with the case of Mitchell v. Dors, 6 Ves. 147, that an injunction may be granted to restrain a trespasser from entering into a mine and removing the minerals therefrom. Trespasses of that kind, as well as those which consist in cutting down and removing timber, or in removing buildings or other improvements of a permanent character, standing upon lands, are readily enjoined, because, as has sometimes been said, such acts alter the character of the property, and also tend to destroy it, and to occasion irreparable loss and damage."

Judge Goff, in Wood v. Braxton (C. C.) 54 Fed. 1005, says:

"The jurisdiction of courts of equity by way of injunction to restrain waste, to prevent the cutting of timber, and the mining of minerals, is one of comparatively recent origin, but it is now fully recognized and well established in this country as well as in England. A leading case, in which the question of equity jurisdiction in such controversies was fully considered and previous authorities discussed, is that of Jerome v. Ross, 7 Johns. Ch. [N. Y.] 315 [11 Am. Dec. 484]. This is the last decree rendered by that illustrious chancellor, whose able, clear, and erudite opinions, not only charm, but instruct and convince us—Kent; and it is replete with the wisdom of the English and American decisions on that question. See, also, Anderson v. Harvey, 10 Grat. [Va.] 386; McMillan v. Ferrell, 7 W. Va. 223; Moore v. Ferrell, 1 Ga. 7; Erhardt v. Boars, 113 U. S. 537, 5 Sup. Ct. 565 [28 L. Ed. 1116]. If the nature of the injury complained of goes to the substance of the estate, thereby producing irreparable mischief, equity will interfere in limine, and not require the party to resort to an action at law, and this independent of the question of the insolvency of the defendant. The chief value of the land in the bill mentioned is charged to be in its timber, and this the defendants, it is conceded, have made extensive arrangements to remove, having expended many thousands of dollars for that purpose. This removal goes to the very substance of the inheritance, to the destruction of that which is the main element of value to it. The fact that the value of timber can be estimated, that it can be determined by the thousand feet, or by the car load, does not deprive a court of equity of the right to interfere by way of injunction, in cases where it is being cut and removed or destroyed, and where the ownership is in controversy. The products of mines and forests have a value that can generally be fixed, yet it was in prevention of trespasses to property of that character that the jurisdiction in question had its origin, and is now most frequently exercised. While it is true that, when this jurisdiction for equity was first claimed, 'Lord Thurlow hesitated' and 'Lord Eldon doubted,' it is now well determined—the decisions coming from courts of such character as to command our respect and of such grade as to compel our approval—that the jurisdiction not only exists, but that it

is absolutely essential for the preservation of right and the suppression of wrong."

It follows, then, that while the proof of insolvency of the defendant is far from convincing, there is jurisdiction here, regardless of that question.

The defendant contends that the leases under which complainant claims are invalid. If that be true, then he had no standing in court, and we need go no further. I find nothing in the pleadings or proof indicating the degree of Indian blood of the various allottees of the lands in controversy. Nor do I find anything in the record from which it may be determined what portion, if any, of the lands involved are the homesteads of the said minors. All the leases held by the complainant were executed subsequent to the act of Congress approved May 27, 1908 (Act May 27, 1908, c. 199, 35 Stat. 312). By the provisions of that act, if these minor allottees were less than half-blood, all their lands were free from restrictions; if of the half-blood or more, and less than three-quarter blood, then all their lands, except the homesteads, were free from restrictions. There being no showing in the record that these minors are of the class of Indians whose lands are still subject to restrictions, that will not be presumed. The leases under which the complainant claims were made by the guardian of the respective minors. They are agricultural leases, and have this clause, regarding the cutting, use, and sale of timber by the lessee or complainant herein:

"The lessee shall have the right to cut such timber growing on said premises for building and repairing on said premises of fences, buildings, or other improvements said lessee shall desire to make, and for the fuel for the occupants of said land, and to cut and sell and use all timber necessary to clear up and prepare for cultivation any and all land thereon; to break out, and to cultivate all land by lessee deemed desirable for farming; to sublease and lease said land, and to assign this lease."

The foregoing provision of the lease only applies to the cutting, use, and selling of such timber as is necessary to clear up and prepare the land for cultivation. The record shows that approximately 75 per cent. of the land is tillable, and that it is well adapted for cultivation after being cleared. While therefore the cutting and removing of the timber, under the terms of the leases, is the taking away and disposing of that portion of the realty which the standing trees necessarily removed represent, still it is a necessary and proper incident to the lease, rather than the sale of the timber; and if the guardian may make the lease without a court order, he may, under the circumstances developed by the record as to the character of the land, incorporate as a part of the lease such a provision regarding the cutting, using, and sale of the timber by the lessee. The general rule is that except where an order of court is required by statute, a general guardian regularly appointed and qualified may, without order of court, lease the lands of his ward during infancy, if the guardianship so long continues, and may reserve the rents to the ward or to himself. 21 Cyc. 85. By the laws of Oklahoma at the time these leases were made, it was provided (Snyder's Compiled Laws of Oklahoma of 1909):

"Sec. 5489. Every guardian appointed under the provisions of this article, whether for a minor or any other person must pay all just debts due from the ward out of his personal estate and income of his real estate, if sufficient; if not, then out of his real estate, upon obtaining an order for the sale thereof, and disposing of the same in the manner provided by law for the sale of real estate of decedents."

"Sec. 5491. Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance and support of the ward, and his family, if there be any; and if such income and profits be insufficient for that purpose, the guardian may sell the real estate, upon obtaining an order of the county court therefore, as provided, and must apply the proceeds of such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any."

The sections of the statute above quoted clearly contemplate that the guardian shall so manage the estate of the ward as that it shall be productive of revenue, and one of the necessary incidents of such management is the leasing or renting of the real estate. This he may do without order of court. Only in case of a sale of the realty is the order of the court necessary. It was within the authority of the guardian to make the leases under which complainant claims, without order of the court. Now, turning to the bills of sale under which the defendant claims, the granting clause reads:

"The parties of the first part do hereby grant, bargain, sell, transfer, set over, and deliver to the parties of the second part, the following described property, to wit: All of the trees and timber of any description felled, wind-fallen, standing, and growing upon the following described lands, to-wit: (Here follows description of property.)"

This clause, together with the other terms of these instruments, clearly indicates a sale of the standing timber, except the third paragraph, which reads:

"And in making this agreement for the sale, bargaining, granting, transferring, delivering, to the said party of the second part the said trees and timber as hereinbefore described, it is understood that the parties of the first part have by their own proper and legal acts severed the said trees and timber in such a way as to create a personalty, and it is no longer to be considered a part of the realty and by this instrument the parties of the first part covenant that heretofore, by legal declarations and proper acts the said timber has been designated and severed in such a way as to create it personal property, and not to be a part of the realty, and with such understanding the sale of said trees and timber by the parties of the first part to the party of the second part has herein been made. And it is understood that if any clause in this contract is invalid, that the clauses or portions that are valid shall still remain and be in full force and effect."

In view of the manifest intention appearing both from the other terms of the instruments and in the light which the record throws upon them, that the defendant was to go upon the land and cut the standing timber, these instruments cannot be viewed in any light other than the sale or conveyance of that timber, and the legal effect of the transaction as determined from those circumstances cannot be changed by any arbitrary declaration such as is apparently attempted in paragraph 3. So far as this standing timber is concerned, it is simply a sale of that portion of the realty, not as an incident to or result of a leasing or rental of the land for any purpose; but as a

separate and independent contract of sale. That the standing timber is a part of the realty is elementary. At the time these bills of sale were executed by the guardian on behalf of his wards, the laws of Arkansas, relating to the leasing and sale of real estate of minors by their guardians (Mansfield's Digest of Arkansas), were in force in this jurisdiction. Sections 3502 and 3511, inclusive (Ind. T. Ann. St. 1899, §§ 2398–2407), provide in detail the steps which must be taken, first by filing of the necessary petition or application, and the showing to be made thereon; the entry of an order by the court; the giving of bond by the guardian; the advertisement, etc. In these bills of sale there is no recitation indicating that any of the formalities prescribed by the foregoing sections of the statutes were observed, and the record shows that no such steps were taken. It is true there is noted on each bill of sale "approved Thomas C. Humphrey, Judge." This was after the contract of sale was made, and the instruments were executed. No petition appears to have been filed; no hearing had upon said petition, as is clearly contemplated by the statute; no bond required on the part of the guardian, as the law provides, and no formal order made by the court. In Freeman on Void Judicial Sales, § 9, at page 41, it is said:

"Except where authorized to do so by a will, or by some statute, neither an administrator, an executor, nor a guardian, can sell real estate without a license or order of sale from the court. A sale made without such license or order of court is not a mere error or irregularity which must be objected to by some proceeding in the court where the license ought to have been sought and granted; and, which, if not so objected to, is waived or ratified. It is a proceeding without any legal support. A conveyance made in pursuance of it has no force whatever. It may be shown to be void when collaterally attacked. In fact no attack, collateral or otherwise, need be made. The claimant under the sale could not show a prima facie case."

And section 11, at page 53 of the same work, says:

"As in an action at law, the declaration should aver the facts entitling the plaintiff to judgment, so in a petition in probate, for authority to sell property, the matters necessary to justify the sale must be set forth. In truth, this necessity seems to be more imperative in the case of the petition than in that of the declaration. The judgment of a court of law can rarely, if ever, be treated as void, because pronounced upon an insufficient complaint. An order in probate must be supported by a petition sufficient in substance to show a legal cause for the order. A license to sell, granted without any petition therefor, is void. But a mere petition is not enough. The statutes of each state designate the contingencies in which the real estate of a deceased or incompetent person may be ordered to be sold. The probate court have no power to license a sale in the absence of these contingencies. The statute prescribes the limit of the judicial authority. Action beyond this limit is not irregular or erroneous merely—it is nonjudicial."

The defendant insists that these bills of sale cannot be collaterally attacked, and cites Currie v. Franklin, 51 Ark. 338, 11 S. W. 477, the syllabus of which reads:

"An order of the probate court for the sale of minors' lands will be presumed to have been regularly made, where nothing to the contrary appears in the record, and its validity cannot be questioned in a collateral proceeding."

An examination of the case shows that the sale involved was made pursuant to an order of the court, based upon a petition filed by the

guardian, the question being as to whether it was verified or supported by such testimony as the statute required. It appeared from the recitals made in the court's order that it was made upon the written application of the guardian, and that the court found that a sale was necessary for the purposes stated in the petition, and it was upon this showing that the court sustained the order. In the case at bar, no order of court was made. This is not, therefore, a collateral attack upon the order of the court directing the sale, but upon the instrument of sale itself, which, as we have seen, is a mere nullity. The bills of sale held by the defendant are of no effect. The guardian had no authority to sell the standing timber or any other portion of the realty of his minor wards, except upon order of court, based upon a petition, and showing, which the statute requires. The mere approval by the judge adds no validity to the instruments. The defendant's counsel, in their brief, contend that the leases under which the complainant holds are void, under the laws of Oklahoma, relating to champerty and maintenance. No such defense is made in the pleadings, nor does it appear from the record that the defendant was in adverse possession of the land at the time the leases under which complainant claims were made. This defense therefore fails. Huston v. Scott, 20 Okl. 142, 94 Pac. 512; Powers v. Van Dyke, 111 Pac. 939.

Let decree be entered for complainant, as prayed in the bill.