## ALLEN *v.* HANKS.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 316. Submitted April 30, 1890. — Decided May 19, 1890.

A and B intermarried in Arkansas in 1859, during which year a child was born to them alive, capable of inheriting, and died in 1862. In 1864, C died, the owner of estate, real and personal in Arkansas, leaving as sole heirs at law, his father, D, his brother, A, and a sister, E. The two latter became the owners in common of decedent's realty, subject to a life estate in D, their father. In 1870, D died, after which in 1871, A and E agreed upon a partition. A desiring to vest the title to his share in his wife — he being then solvent — conveyed (his wife uniting with him to relinquish dower) to his sister, E, all his interest in the lands inherited from his brother. By deed of date January 2, 1871, E (her husband joining her) conveyed to A's wife what was regarded as one-half in value of the lands formerly owned by C, including those in dispute in this suit. This deed was recorded May 24, 1875, in the county where A's wife then and ever since resided. No other schedule of it, nor other record nor intention to claim the lands in dispute as her separate property was ever filed by her. After the date of the deed to A's wife, the lands in dispute were cultivated by him as agent of his wife, and in her name, for her and not in his own right. In 1884, his creditors obtained a judgment against him; and another on a debt contracted in 1881, sued out execution, and caused it to be levied upon the lands in dispute, and advertised them to be sold. A's wife brought a suit in equity to enjoin the sale upon the ground that the lands were not subject to her husband's debts, and that a sale would create a cloud upon her title; *Held,*

(1) The constitution of Arkansas of 1868 placed property thereafter acquired by a married woman, whether by gift, grant, inheritance or otherwise, as between herself and her husband, under her exclusive control, with power to dispose of it or its proceeds, as she pleased;

(2) The deed by E and her husband to A's wife was subject to the constitution of 1868, which made any property acquired by the wife,

after it went into operation, her separate estate, free from his control;

(3) When the deed of 1871 was recorded in 1875, if not before, the lands in dispute became free from the debts of A, and therefore were not liable for the debt contracted in 1881;

(4) Neither the constitution of 1868 nor that of 1874 could take from the husband any rights vested in him prior to the adoption of either instrument. But when the constitution of 1868 was adopted A had no estate by the curtesy in these lands in virtue of his marriage; for his wife had then no interest in them. In Arkansas, as at common law, except when from the nature and circumstances of the real property of the wife she may be regarded as constructively‍ in possession, marriage, actual seisin, issue and death of the wife are all requisite to create an estate by the curtesy;

(5) It is competent for a State, in its fundamental law or by statute, to provide that all property thereafter acquired by or coming to a married woman, shall constitute her separate estate, not subject to the control, nor liable for the debts, of the husband;

(6) It is the right of those who have a clear, legal and equitable title to land, connected with possession, to claim the interference of a court of equity to give them peace or dissipate a cloud on the title.

IN EQUITY. The case is stated in the opinion.

*Mr. Jacob Trieber* for appellants.

*Mr. James C. Tappan* and *Mr. John J. Hornor* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

This suit involves the title to certain lands in Arkansas, which the appellee, a married woman, claims to constitute her separate estate, and, as such, not liable for the debts of her husband, James M. Hanks.

By the laws of Arkansas in force when the appellee and her husband were married, (Rev. Stat. Ark. 1858; Gould's Dig. 765, c. 111,) it was provided that (§ 1) "any married woman may become seized and possessed of any property, real and personal, by direct bequest, devise, gift or distribution in her own right and name and as of her own property : *Provided,* The same does not come from the husband after coverture;" that (§ 7) "before any married woman shall be entitled to the

privileges and benefits of the provisions of this chapter, she shall cause to be filed in the recorder's office, in the county where she lives, a schedule of the property derived through her, and no property belonging to any married woman shall be exempt from the payment of any debts contracted by her husband previous to the filing of the schedule aforesaid," and that (§ 8) " whenever the deed, bequest, grant, decree or other transfer of property of any kind to any married woman shall expressly set forth that the same is designed to be held exempt from the liabilities of her husband, such property with the natural increase thereof. shall be deemed and considered as belonging exclusively to such married woman, under the provisions of this chapter, and shall not be liable to execution or sale for the payment of debts of her husband, whether contracted before or after the accruing of the title of the wife: *Provided*, That no conveyance from any married man to his wife, either directly or indirectly, shall entitle her to any benefits or privileges of this act."

In 1868 a new constitution was adopted, and among its provisions was one declaring: "The real and personal property of any female in this State, acquired either before or after marriage, whether by gift, grant, inheritance, devise or otherwise, shall, so long as she may choose, be and remain the separate estate and property of such female, and may be devised or bequeathed by her, the same as if she were a *feme sole*. Laws shall be passed providing for the registration of the wife's separate property, and when so registered, and so long as it is not entrusted to the management or control of the husband otherwise than as an agent, it shall not be liable for any of his debts, engagements or obligations." Art. XII, § 6.

This was followed in 1873 by an act providing that (Gantt's Dig. Stat. Ark. 1874, § 4193, p. 756) "the property, both real and personal, which any married woman now owns or has had conveyed to her by any person in good faith and without prejudice to existing creditors, or which she may have acquired as her sole and separate property; that which comes to her by gift, bequest, descent, grant or conveyance from any person;

that which she has acquired by her trade, business, labor or services carried on or performed on her sole or separate account; that which a married woman in this State holds or owns at the time of her marriage, and the rents, issues and proceeds of all such property, shall, notwithstanding her marriage, be and remain her sole and separate property, and may be used, collected and invested by her in her own name, and shall not be subject to the interference or control of her husband, or liable for his debts, except such debts as may have been contracted for the support of herself or her children by her as his agent;" that, § 4201, "before any married woman shall be entitled to the privileges of this act in respect to property held by her separately as aforesaid, she shall cause her said separate property to be recorded in her name in the county where she lives or has a residence;" and that, § 4203, "the property of a woman, whether real or personal, and whether acquired before or after marriage, in her own right, shall not be sold to pay the debts of the husband contracted or damages incurred by him before marriage."

By the constitution of Arkansas of 1874, it was declared that "the real and personal property of any *feme covert* in this State, acquired either before or after marriage, whether by gift, grant, inheritance, devise or otherwise, shall, so long as she may choose, be and remain her separate estate and property, and may be devised, bequeathed or conveyed by her the same as if she were a *feme sole*, and the same shall not be subject to the debts of her husband." Art. IX, § 7.

The present suit depends upon the construction of these statutory and constitutional provisions, as applied to certain facts disclosed in this case, in respect to which there is no dispute. These facts will now be stated.

James M. Hanks and the appellee were married in the State of Arkansas in the year 1859. During that year a child was born to them, alive, and capable of inheriting. It died in 1862. John F. Hanks, the owner of considerable property, real and personal, in the State of Arkansas, including the lands in dispute, died in 1864, his sole heirs at law being his father, Fleetwood Hanks, and his brother, James M. Hanks,

the husband of appellee, and his sister, Ann A. Porter, the wife of William Porter. Fleetwood Hanks took a life interest in the estate left by his son; James M. Hanks and Mrs. Porter inheriting subject to that interest. The father died in 1870, whereupon the brother and sister of the decedent became the owners in common of the realty. In 1871 they agreed upon a partition; and James M. Hanks, for the purpose of having the title to his share vested in his wife — he being then perfectly solvent — executed, January 2, 1871, a deed conveying all his interest in the lands so inherited to Mrs. Porter, his wife joining in it for the purpose of relinquishing her dower. At the same time Mrs. Porter, her husband joining with her, conveyed to the appellee what was regarded as one-half in value of the lands inherited from John F. Hanks, including those here in controversy. From the date of that deed forward the lands in dispute have been cultivated by James M. Hanks "as agent of his wife and in her name, for her and not in his own right." The deed from Porter and wife to Mrs. Hanks was filed for record, and recorded May 24, 1875, in the county where the lands are situated, and in which the appellee then, and has ever since, resided, and had her home; but "no other schedule of it, nor other record, nor intention to claim it as her separate property, was ever filed by her."

On the 14th of October, 1884, the appellants, J. H. Allen, Thomas H. West and John C. Bush, constituting the firm of Allen, West & Bush, recovered in the court below a judgment against W. L. Nelson and James M. Hanks for $14,645.29, with interest at the rate of six per cent per annum from the above date. The judgment was for a debt contracted in 1881. Execution upon that judgment having been levied on the interest of James M. Hanks in the lands in dispute, and the marshal, Fletcher, having advertised the same to be sold in satisfaction of the execution, the appellee brought the present suit, and seeks a decree perpetually enjoining the sale. The appellants, Allen, West & Bush, answered, insisting that James M. Hanks had an interest in the lands subject to their execution. The decree asked by the appellee was entered, and is now here for review.

The question to be determined is, whether the appellee's husband has any interest in these lands that may be seized and sold for the debt due Allen, West & Bush, contracted in 1881.

The contention of the appellants is, that upon the marriage of the appellee and her husband in 1859, he acquired, at once, a right to take the rents and profits of all lands owned by the wife at any time during coverture, unless the deed or devise under which she held them expressly excluded his marital rights, or unless the property was "scheduled" in conformity with the laws then in force; and, as to the latter, not even then if acquired either directly or indirectly from the husband; that upon issue born of the marriage in 1859, capable of inheriting, he at once acquired an estate by the curtesy initiate or an estate for life, which he could convey without his wife's consent, was subject to execution for his debts, and was not, and could not be, affected by any subsequent change in the law. The contention of appellee is, that she owned no property at the time of marriage or at the birth of her child, or when it died; that before she acquired any lands whatever, the married woman's law was changed by the constitution of 1868, so as to vest in her an absolute title to all property subsequently acquired by her, exempt from any estate in the husband that would be subject to seizure by his creditors; that the only limitation upon such right was that she should comply with the acts of the legislature passed in reference thereto; and that when the act of 1873 was passed, and she recorded her deed under its provisions, the real estate acquired by her under the constitution of 1868 was free from liability for the debts and contracts of her husband.

If the case depended entirely upon the statutes in force prior to the adoption of the constitution of 1868, it may be that the law would be for the judgment creditors of the appellee's husband, because the provisions of the Revised Statutes of 1858, (Gould's Digest, c. 111, p. 765,) declaring that any married woman might become seized and possessed of property by direct bequest, devise, gift or distribution in her own right and as of her own property, did not apply where the property

came from the husband after coverture, or was conveyed by him to his wife directly or indirectly; and, also, because the appellee did not file in the recorder's office, where she lived, the required "schedule." But we are of opinion that the constitution of 1868 made changes in the previous law that had a material bearing upon the rights of the parties. The declaration in that constitution that the property of any female in the State, acquired before or after marriage, whether by gift, grant, inheritance, devise "or otherwise," should, so long as she chose, be and remain her separate estate and property, and subject to be devised or bequeathed by her as if she were a *feme sole*, placed the property acquired by the appellee after that constitution went into effect, as between herself and her husband, under her exclusive control, (unless the deed or other instrument under which she held it otherwise directed,) with power to dispose of the proceeds as she pleased — a power inconsistent with any right in the husband to take the rents and profits. We limit this effect of the constitution of 1868 to property acquired after its adoption, because that instrument, upon this point, should receive the same construction as the Supreme Court of Arkansas has given to the constitution of 1874, namely, that it could not take from the husband any rights *vested* in him prior to its adoption. *Tiller &c.* v. *McCoy*, 38 Arkansas, 91, 96; *Ward* v. *The Estate of Ward*, 36 Arkansas, 586, 588; *Shryock, Trustee* v. *Cannon*, 38 Arkansas, 434, 437; *Erwin* v. *Puryear*, 50 Arkansas, 356, 358.

Did the constitution of 1868 take from the husband any rights previously vested, in virtue of his marriage, to the lands in dispute? Clearly not. Obviously the appellee had no interest in them at the time of marriage, or at the birth or death of her child, because they were not, at either date, owned by her husband. Nor had she any interest in them at the time of the adoption of that constitution, except that after the death of John F. Hanks, in 1864, she may, perhaps, have had a contingent right of dower in such real estate as might fall to her husband upon the termination of the life estate of Fleetwood Hanks, and after partition between her husband, James M. Hanks, and his sister, Mrs. Porter. When, in 1871,

the title to these lands was conveyed by Porter and wife to the appellee by direction of her husband, the conveyance was necessarily subject to the constitutional provision then in force, that the lands as between herself and husband should constitute her separate property, and as such, be free from his control. It is true that the lands so conveyed to her did not by the conveyance of 1871 become exempt from liability for the debts of her husband until they were " scheduled," as required by chapter 111 of the Revised Statutes of 1858, which chapter was not, in the matter of scheduling the property of married women, (other than property in slaves,) superseded by the constitution of 1868. *Berlin* v. *Cantrell*, 33 Arkansas, 611, 618; *Tiller &c.* v. *McCoy*, 38 Arkansas, 91, 95; *Humphries* v. *Hanson*, 30 Arkansas, 79, 88. But the provision in that constitution as to the registration of the wife's separate property had reference to its protection against the debts, engagements and obligations of her husband. As between herself and her husband, no registration was required or necessary. A law for registration, such as the constitution of 1868 directed to be passed, was not enacted until 1873, when the act of that year, already referred to, was passed, declaring, among other things, that any property then owned by a married woman, or which had been conveyed to her by any person in good faith and without prejudice to existing creditors, or which she might have acquired as her separate property, should be and remain her sole and separate property, and might be used, collected and invested in her own name, and should not be subject to the interference or control of her husband, or liable for his debts, except such debts as might have been contracted for the support of the wife or her children by her as his agent. That act, as we have seen, provided that before any married woman should be entitled to its privileges, in respect to property held by her separately as aforesaid, she should cause her said property to be recorded in her name in the county where she lived or had a residence. When it was passed, the appellee, by virtue of the deed of 1871 by Porter and wife, and of the constitution of 1868, certainly held the lands in dispute as her separate

property; and when the deed to her, under which she acquired title, was recorded in the county where she lived or had her residence, all was done that the act of 1873 required to be done in order to protect her estate against the creditors of her husband.

But it is said, that, as the conveyance to the appellee in 1871 did not, in express terms, create a separate estate in her favor, the placing it upon record did not meet the requirements of the statutes in force when the constitution of 1868 was adopted, or of the act of 1873; and that, in order to protect the property against the creditors of the husband, it was necessary that there be a record of the wife's property distinctly as her separate estate. Such, perhaps, may have been the state of the law in, Arkansas prior to the act of 1873, although there is language in *Tiller* v. *McCoy*, 38 Ark. 91, 96, (which was a case between a married woman and the creditors of the husband,) indicating that there was some difference between the recording required by that act and the "scheduling" provided for in previous statutes. The court, in that case, said: "Appellee did not schedule her land as required by the act in Gould's Digest, (chapter 111, p. 765,) and she held it by inheritance, and not by any conveyance or bequest, etc., showing that it was to be exempt from liabilities for her husband. Nor did she cause the land to be recorded in her name as required by the act of April twenty-eighth, 1873." This language implies that some distinction was made between the recording required in the act of 1873 and the "scheduling" prescribed in previous statutes. Be this as it may, the constitution of 1868 was itself notice that property acquired by a married woman after its adoption, whether by gift, grant, inheritance, devise "or otherwise," should be and remain, so long as she chose, her separate estate; and when the deed of 1871 was recorded in 1875, all had notice of record that, if that deed be interpreted in the light of the constitution in force when it was executed, the property described in it was, by force of that instrument, the separate estate of Mrs. Hanks, until by conveyance or in some other mode she chose that it should not remain her separate prop-

erty. The effect of the constitution of 1868, and of the act of 1873, in respect to property acquired by a married woman after the adoption of the former and after the passage of the latter, was to make that property her separate estate as between herself and her husband, whether the deed conveying the title to her was recorded or not; and, as between her and the creditors of the husband, from the time the property, so held by her separately, was recorded in her name in the county where she lived or had a residence. It was so recorded in 1875. If, as between the appellee and her husband, the latter could not, of right, take the rents and profits of the wife's land, it is not perceived that he had any interest that could be seized by his creditors, at least after the deed of 1871 was recorded in the proper county.

When to these considerations is added the fact that the deed under which the appellee claims was recorded after the constitution of 1874 took effect, and long before the debt of Allen, West & Bush was contracted, there would seem to be no just ground for the claim that her property is liable to be sold for that debt. It may be also observed, that, while the constitution of 1874 is not to be so construed as to divest the husband of any right previously vested in him, we see no reason why the appellee, as between herself and the appellants, may not invoke the protection of the clause in that instrument exempting the wife's property, whenever and in whatever mode acquired, from the debts of her husband. The husband, as between himself and his wife, had no vested right in these lands when the constitution of 1874 was adopted, nor, indeed, any interest subsequent to the execution, by his direction, of the deed of 1871, the effect of which deed was, as we have seen, to create a separate estate for her in the property conveyed.

It is contended, however, that the constitution of 1868 could not divest the appellee's husband of his marital rights in respect to the property that he caused to be conveyed to his wife in 1871. This contention proceeds upon the ground that immediately upon marriage and birth of issue, an estate by the curtesy vested in the husband, not only in the real prop-

erty then owned by the wife, but in such as she might acquire at any time during coverture; and that no constitutional or statutory provision could affect his rights, in this respect, even as to property acquired by the wife after the change in the law. We do not concur in this view. It is not sustained by any decision of the Supreme Court of Arkansas to which our attention has been called, or of which we have any knowledge. On the contrary, the cases above cited, while holding that the constitution of 1874 could not affect any interest vested in the husband prior to its adoption, concede, by necessary implication, that, in all other respects, that constitution would control every acquisition of property by a married woman after its adoption. When the constitution of 1868 was adopted, the appellee's husband could have no estate by the curtesy in lands not then owned by her; for, as was said by the Supreme Court of Arkansas in *McDaniel* v. *Grace*, 15 Arkansas, 465, 483, except when from the nature and circumstances of the real property of the wife she may be regarded as constructively in possession, (as where it consists in wild lands, or it is impossible or impracticable to enter upon them,) marriage, actual seizin of the wife, issue and death of the wife, are all requisite to create an estate by the curtesy; and that the husband was not entitled to his curtesy, according to the common law, unless the wife was seized in fact and in deed. *Mercer's Lessee* v. *Selden*, 1 How. 37, 54; *Davis* v. *Mason*, 1 Pet. 503, 507; 4 Kent, 29, 30. There was, upon the part of the wife, no seizin of the lands in dispute until 1871, when the title came to her. That it is competent for the State, in its fundamental law or by statute, to provide that all property thereafter acquired by or coming to a married woman shall constitute her separate estate, not subject to the control, nor liable for the debts, of the husband, and that such regulations do not take away or impair any vested right of the husband, is, in our judgment, a proposition too clear to require argument or the citation of authorities to support it.

Upon the whole case, we are of opinion that the appellee's husband has no interest in the lands in dispute that may be taken under the execution of the appellants, Allen, West &

Bush. The decree in her favor was, therefore, right, unless, as contended, the appellee had a sufficient remedy at law for the protection of her rights. It is not sufficient that she has *a* remedy at law; "it must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity." *Boyce* v. *Grundy*, 3 Pet. 210, 215; *Watson* v. *Sutherland*, 5 Wall. 74. Now, what remedy at law is adequate to the relief she seeks, and to which she is entitled if these lands constitute her separate estate and may not be taken for her husband's debts? She is in possession, and, therefore, cannot bring ejectment. Must she remain inactive while the sale proceeds, and until the purchaser obtains and has recorded the marshal's deed to her lands, and then bring an action to have the deed cancelled and the sale set aside, as clouds upon her title? It needs no argument to show that the existing levy upon the appellee's land constitutes itself a cloud upon her title, which, if not removed and the proposed sale prevented, will injure the salable value of the lands, and otherwise injuriously affect her rights. In *Orton* v. *Smith*, 18 How. 263, 265, the right of those who have a clear, legal and equitable title to land, connected with possession, to claim the interference of a court of equity to give them peace, or dissipate a cloud on the title, is recognized. And such is the established rule in Arkansas, where the general distinction between the functions of courts of law and equity have been maintained. In *Branch* v. *Mitchell*, 24 Arkansas, 431, 439, the court said: "When a party has the only or the better legal title to land, as against that which he wishes to put at rest, he may obtain or regain possession by an action of ejectment, if he is out of possession; and it is reasonable that equity should decline to interfere where he may obtain all the relief he needs at law. If he is *in* possession, then, as he can bring no action at law, it has been held that he may ask the court of equity to remove a cloud upon his title, which makes it less valuable, and may prevent his disposing of it to others." The same principle is recognized in *Miller* v. *Neiman*, 27 Arkansas, 233; *Chaplin* v. *Holmes*, 27 Arkansas, 414, 417; *Crane* v. *Randolph*, 30 Arkansas, 579,

585. In *Pettit* v. *Shepherd*, 5 Paige, 493, 501, the chancellor said: "If a court of chancery would have jurisdiction to set aside the sheriff's deed which might be given on a sale, and to order the same to be given up and cancelled, as forming an improper cloud upon the complainant's title to his farm, it seems to follow, as a necessary consequence, that the court may interpose its aid to prevent such a shade from being cast upon the title, when the defendant evinces a fixed determination to proceed with the sale." "It is better," the court said in *Gerry* v. *Stimson*, 60 Maine, 186, 189, "to prevent the creation of a fictitious or fraudulent title, than to compel its cancellation or its release after it has been created." So in *Hinchley* v. *Greany*, 118 Mass. 595, 598: "The plaintiff is not required to wait until somebody obtains a title under a sale before he can seek his remedy. Even when this remedy [which in that case was a petition summoning the defendant to show cause why he should not bring an action to try his title] may be availed of under the statute, it is not necessarily so adequate and complete as to supersede the remedy in equity." *Irwin* v. *Lewis*, 50 Mississippi, 363, 368; *Christie* v. *Hale*, 46 Illinois, 117, 122; *Merriman* v. *Polk*, 5 Heiskell, 717, 718; *Jones* v. *De Graffenreid*, 60 Alabama, 145, 151.

For the reasons stated, we are of opinion that the relief asked was properly granted.

*Decree affirmed.*