**BUCKWALTER MOTORS, INC., and Don Walker Chevrolet-AMC–Jeep, Inc., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. No. 82–31–D.**

United States District Court, S.D. Iowa, C.D.

July 16, 1984.

O'Brien, P.C., Des Moines, Iowa, for plaintiffs.

David W. Belin, Dennis W. Johnson and Linda L. Kniep of Belin, Harris, Helmick & Heartney, Des Moines, Iowa, for defendant.

## MEMORANDUM AND ORDER

HANSON, Senior District Judge.

Plaintiffs, Buckwalter Motors, Inc. and Don Walker Chevrolet-AMC–Jeep, Inc. (Walker Chevrolet), filed a petition in equity in Iowa District Court seeking injunctive relief against defendant, General Motors Corporation (GM), enforcing Section 322A.12 of the Code of Iowa. Plaintiffs are Iowa corporations with their principle place of business in Iowa. Defendant is a Delaware corporation with its principle place of business in Detroit, Michigan. The amount in controversy exceeds $10,-000. Pursuant to defendant's timely petition, this action was removed to this Court under 28 U.S.C. §§ 1441, 1446. Because there is diversity of citizenship and the amount in controversy exceeds $10,000, this Court has original jurisdiction under 28 U.S.C. § 1332.

This action came on for trial to the Court on April 9, 1984. The Court now enters the following Findings of Fact and Conclusions of Law in support of its judgment for plaintiffs.

## FINDINGS OF FACT

1. Walker Chevrolet is an auto dealership under a franchise with GM.

2. Prior to the events which gave rise to this action, Don Walker was the sole shareholder and principal manager of Walker Chevrolet. In recognition of his ownership and management, Don Walker was named as the "dealer owner" and "dealer operator" of Walker Chevrolet in the third section of the "Dealer Sales and Service Agreement" (franchise agreement) between GM and Walker Chevrolet. (The third section of the franchise agreement is referred to as "Paragraph Third.")

W. Don Brittin, Jr., and Kent Emery of Nyemaster, Goode, McLaughlin, Emery &

3. Paragraph Third provides as follows:

General Motors is entering into this Agreement in reliance on the capabilities of the person(s) identified below [Don Walker] and on Dealer's assurance that their personal services will be provided in the Dealership Operations. Dealer represents that such person(s) will be the principal manager(s) of Dealer (herein called Dealer Operator) and the principal owner(s) of Dealer (herein called Dealer Owner).

General Motors and Dealer agree that the Dealer Operator(s) will actively exercise full managerial authority in the Dealership Operations, and that all owners of Dealer will each continue to own, both of record and beneficially, the percentage of ownership represented by Dealer in the Dealer Statement of Ownership approved by General Motors.

The fourth section of the franchise agreement provides that the dealer will give GM prior written notice of any change in its dealer operator or in its ownership. Article IV, section A(2) of the "additional provisions" of the franchise agreement provide that GM may terminate the franchise upon either:

(a) The removal, resignation, withdrawal or elimination from Dealer for any reason of any Dealer Operator or Dealer Owner without the prior written approval of General Motors. [or]

. . . . .

(d) Any change, whether voluntary or involuntary, in the principal management or in the record or beneficial ownership of Dealer as set forth in the Dealer Statement of Ownership furnished by Dealer without the prior written approval of General Motors.

4. Don Walker sold all shares of Walker Chevrolet to Buckwalter Motors, another GM dealership which is solely owned by Royce Buckwalter. The sale price was $250,000. Royce Buckwalter became the principal manager of Walker Chevrolet.

5. GM was not given prior notice of the sale and did not give prior approval to the sale.

6. After the fact, Don Walker and Royce Buckwalter notified GM of the transfer of Walker Chevrolet stock and requested that Royce Buckwalter be named dealer owner and dealer operator in Paragraph Third.

7. GM refused to name Royce Buckwalter in Paragraph Third and threatened to terminate Walker Chevrolet's franchise unless the sale to Buckwalter Motors was rescinded or some other action taken to make the sale acceptable to GM. This threat has not withdrawn.

8. GM continues to refuse to name Royce Buckwalter as the dealer owner or dealer operator of Walker Chevrolet.

9. The reason for GM's refusal to recognize Royce Buckwalter as dealer owner or dealer operator of Walker Chevrolet is GM's policy against naming one person as dealer owner or dealer operator for two dealerships.

10. GM recognizes the sale of Walker Chevrolet only as a sale of assets, not as a sale of a franchised GM dealership. GM continues to treat Don Walker as the dealer owner and dealer operator of Walker Chevrolet. If Buckwalter Motors sold Walker Chevrolet to a third party, GM would consider naming the buyer in Paragraph Third but would require an application from Don Walker to do so.

11. GM has engaged in a practice of refusing to change the person named in Paragraph Third when it is considering terminating a franchise.

12. Royce Buckwalter desires to change the name of Walker Chevrolet to reflect its new ownership but has been prevented from doing so by GM's refusal to recognize him as the dealer owner.

13. Since the sale, the day-to-day business of the dealership has proceeded as usual; GM has continued to provide cars, honor warranties, et cetera. The one exception to this is that Walker Chevrolet was not allowed to participate in the latest dealer incentive program because it is involved in litigation with GM.

Most of these facts are essentially undisputed. However, as to finding Number 7, GM argues that there is no outstanding threat to terminate Walker Chevrolet's franchise. The threat was originally made in a letter dated July 22, 1981 to Walker Chevrolet from GM's zone manager for Walker Chevrolet. The letter stated that Don Walker's actions "may result" in the termination of Walker Chevrolet's franchise. It further stated that GM would "delay until August 24, 1981, taking steps to terminate" the franchise so as to give Don Walker time to rescind the sale or propose some other arrangement acceptable to GM. A subsequent letter, dated August 28, 1981, noted that the earlier letter had "established August 24, 1981 as the date after which we may take steps to terminate" the franchise. The second letter went on to state that since Don Walker had not replied to the first letter, GM would give him additional time and "delay taking action to terminate the [franchise] until after September 30, 1981." These letters did not state absolutely that Walker Chevrolet's franchise would be terminated if GM was not satisfied, but they certainly threatened termination. Though the deadlines established in the letters have passed without termination of Walker Chevrolet's franchise, there is no evidence that the threat to terminate has been withdrawn. Eldon Kibler, GM's current zone manager for Walker Chevrolet, testified that he did not have any plans to cut off the flow of cars to Walker Chevrolet and that "as far as I am concerned, it is business as usual." However, the deposition of James McDonald, GM's former zone manager for Walker Chevrolet, makes clear that a zone manager is not in a position to make decisions about terminating a franchise. Therefore, the fact that Kibler has no current plans other than business as usual is of little significance and is not inconsistent with the threat to terminate Walker Chevrolet's franchise.

The only other matter on which there is dispute is whether Walker Chevrolet was excluded from the latest dealer incentive program. Both Royce Buckwalter and Don Walker testified that Walker Chevrolet had been excluded from the latest program. Eldon Kibler testified that "to my knowledge" Walker Chevrolet had been allowed to participate in all programs. The Court credits the testimony of Royce Buckwalter and Don Walker, who testified unequivocally that Walker Chevrolet had been excluded, over the testimony of Kibler, who testified only to his knowledge of the matter.

## CONCLUSIONS OF LAW

Section 322A.12 of Iowa's Motor Vehicle Franchisers' Act provides:

Notwithstanding the terms, provisions or conditions of any agreement or franchise, subject to the provisions of subsection 2 of section 322A.11 in the event of the sale or transfer of ownership of the franchisee's dealership by sale or transfer of the business or by stock transfer or in the event of change in the executive management of the franchisee's dealership the franchiser shall give effect to such a change in the franchise unless the transfer of the franchisee's license under chapter 322 is denied or the new owner is unable to obtain a license under said chapter, as the case may be.

Iowa Code, § 322A.12 (1983).

In this action plaintiffs seek an injunction compelling GM to comply with § 322A.12 by recognizing Royce Buckwalter as the dealer owner and dealer operator of Walker Chevrolet and by naming Royce Buckwalter as such in Paragraph Third. Further, plaintiffs seek an injunction prohibiting future violations of § 322A.12.

GM has not argued that § 322A.12 is applicable to this case under choice of law principles. Initially, GM raised the defense that § 322A.12 was unconstitutional. However, GM has withdrawn this defense. Therefore, this Court will apply § 322A.12 as if no constitutional issue were ever raised.

As this case stands now, there are only two issues to be decided: whether GM violated § 322A.12 and whether plaintiffs should be granted the injunctive relief

sought. Defendant argues that it has not violated § 322A.12 and that, even if it has, plaintiffs are not entitled to injunctive relief. GM bases both these arguments on the fact that it has continued to conduct day-to-day business with Walker Chevrolet. GM argues that this constitutes compliance with § 322A.12. Further, defendant argues that because day-to-day business has continued, plaintiffs can show no present damage or likelihood of future damage, as required for injunctive relief.

■ Continuing to do business with Walker Chevrolet, while refusing to formally recognize Royce Buckwalter as dealer owner and dealer operator does not constitute compliance with § 322A.12. Section 322A.12 requires, with exceptions not applicable here, that a franchiser "give effect to" a change in the ownership or executive management of a franchisee's dealership. The phrase "give effect to" is broad and implies affirmative action by the franchiser. GM argues that it has given effect to the change in ownership and management by continuing to do business with Walker Chevrolet. However, other sections of the Motor Vehicle Franchisers Act prohibit a franchiser from terminating a franchise because of a change in ownership or management. *See* Iowa Code §§ 322A.2, .11 (1983). This Court believes that § 322A.12 requires something more, including formal recognition of a change in ownership and management. In this case formal recognition of the change in ownership and management requires that Royce Buckwalter be named as dealer owner and dealer operator in Paragraph Third of the agreement that establishes Walker Chevrolet's franchise. Therefore, this Court holds that GM has violated § 322A.12 in failing to recognize Royce Buckwalter as the dealer owner and dealer operator of Walker Chevrolet and in failing to name Royce Buckwalter as such in Paragraph Third.

■ GM has argued that plaintiffs are not entitled to injunctive relief because they have not yet suffered any damages. This is a red herring. Past or present damages are not required for injunctive

relief. The point of injunctive relief is not to remedy past or present damages, but to prevent future damages. What is required for injunctive relief is a real danger of injury for which the plaintiff has no adequate legal remedy. *Denison v. Clabaugh*, 306 N.W.2d 748, 755 (Iowa 1981); *Rosendahl Levy v. Iowa State Highway Commission*, 171 N.W.2d 530, 537–38 (Iowa 1969); 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2942, 368–69 (1973).

GM argues that plaintiffs can show no real danger of injury because the day-to-day business of Walker Chevrolet has continued as usual. Despite the fact that the day-to-day business of Walker Chevrolet has continued substantially as usual, plaintiffs have shown a real danger of injury from GM's failure to recognize Royce Buckwalter as Walker Chevrolet's dealer owner and dealer operator. First, GM has threatened to terminate Walker Chevrolet's franchise. This threat must be seen as real in light of the provisions in the franchise agreement purporting to give GM the right to terminate Walker Chevrolet's franchise under the facts of this case. (See Finding of Fact No. 3.) Further, the reality of GM's threat is underlined by its defense of this action and by its practice of refusing to change the person named in Paragraph Third when it is contemplating termination of a franchise.

Apart from GM's threat to terminate Walker Chevrolet's franchise, Royce Buckwalter has been prevented from changing the name of Walker Chevrolet to reflect its new ownership by GM's refusal to recognize him as the dealer owner. This is a present and continuing injury to plaintiffs.

■ Finally, aside from the explicit termination threat and the prevention of the corporate name change, the mere fact that the dealer owner and dealer operator listed in Walker Chevrolet's franchise agreement is not the true owner and manager of Walker Chevrolet constitutes a cloud on Walker Chevrolet's franchise. This cloud threatens Walker Chevrolet's status as a franchised dealer, reduces the value of

Buckwalter Motors' stock in Walker Chevrolet, and threatens Buckwalter Motors' ability to transfer Walker Chevrolet as a going GM franchise. Just as a court of equity can use an injunction to prevent or remedy a cloud on title to real property, *Allen v. Hanks,* 136 U.S. 300, 310–12, 10 S.Ct. 961, 964–65, 34 L.Ed. 414 (1889); *Wickliffe v. Owings,* 58 U.S. (17 How.) 47, 49–50, 15 L.Ed. 44 (1854); 65 Am.Jur.2d *Quieting Title* §§ 17, 63 (1972), this Court can use its equitable power to remove the cloud on Walker Chevrolet's franchise.

As a solution to the injuries threatening plaintiffs, GM proposed that if Buckwalter Motors sold Walker Chevrolet to a third party, GM would consider naming the buyer in Paragraph Third, upon an application from Don Walker. However, GM has no right to force Buckwalter Motors to sell or to require Buckwalter Motors to get the cooperation of Don Walker to effect a sale.

Plaintiffs have no adequate remedy at law for the injuries threatening them. Legal damages for the injuries involved here would be difficult or impossible to measure. Further, the continuing injuries caused by the cloud on Walker Chevrolet's franchise and the prevention of a corporate name change could be remedied only by a multiplicity of suits. *See generally, Bateman v. Ford Motor Co.,* 302 F.2d 63, 66 (3d Cir.1962) (damages inadequate remedy for termination of auto dealership's franchise); 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2944 (1973) (adequacy of legal remedies).

GM argues that plaintiffs have an adequate administrative remedy before the Transportation Regulation Authority of Iowa's Department of Transportation. This Court does not see any remedy available to plaintiffs before the Transportation Regulation Authority. Various sections of the Motor Vehicle Franchiser's Act provide that to take certain action a franchiser must get the Authority's permission or establish certain facts in a hearing before the Authority. *See* Iowa Code §§ 322A.2–.4, .6 (1983). However, the Court finds no authority for franchisees to enforce their

rights under § 322A.12 before the Authority.

In addition to finding a real danger of injury without adequate legal remedy, a court granting injunctive relief must always consider the equities involved. This requires balancing the harm to defendant if an injunction is granted against the harm to plaintiff if an injunction is denied. The public's interest must also be considered. *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 112–13 (8th Cir.1981); *Lakota Consolidated Independent School District v. Buffalo Center/Rake Community Schools,* 334 N.W.2d 704, 709 (Iowa 1983); 11 Wright & Miller, *Federal Practice & Procedure:* Civil § 2942, 366–67 (1973). The harm to plaintiffs if an injunction is not granted has been thoroughly discussed above. There will be no legally cognizable harm to GM if an injunction is granted because GM will merely be enjoined to obey the law. The public interest factor also argues for an injunction against GM. Plaintiffs have shown a continuing refusal by GM to obey the clear dictates of § 322A.12. Indeed, GM's conduct toward plaintiffs, its conduct in this litigation, and its practice of refusing to change a person named in Paragraph Third when it is considering terminating a franchise show that GM has generally ignored § 322A.12 and has attempted to frustrate the purpose of the section when compliance does not suit its purposes. Thus the public's interest in the enforcement of its laws argues for an injunction against GM. Based on the above, the Court concludes that plaintiffs should be granted an injunction requiring that GM recognize Royce Buckwalter as the dealer owner and dealer operator of Walker Chevrolet and name him as such in Paragraph Third.

Plaintiffs have sought an injunction prohibiting future violations of § 322A.12. Under the analysis above, GM will be enjoined to recognize Royce Buckwalter as the dealer owner and dealer operator of Walker Chevrolet until there is a change in the actual ownership or management of Walker Chevrolet. However, the Court un-

derstands plaintiffs to be seeking an injunction prohibiting violations of § 322A.12 in connection with any future change of ownership or management. The Court will not go that far because there is no reason to believe that GM will not comply with § 322A.12 in connection with future changes of ownership or management. As noted above, GM has generally ignored § 322A.12 and has attempted to frustrate the purpose of the section when compliance does not suit its purposes. However, it is apparent that GM generally complies with § 322A.12 for its own purposes. The only reason GM has failed to comply with § 322A.12 in this case is its policy against naming the same person as dealer owner or dealer operator for two dealerships. It is unlikely that this situation will recur. It has been shown that GM has a policy of refusing to change the person named in Paragraph Third when it is considering terminating a franchise. However, apart from the difficulties that will be resolved by this Court's order, there is no reason to believe that GM is considering terminating Walker Chevrolet's franchise.

GM's final argument against equitable relief for plaintiffs is that plaintiffs have unclean hands. GM claims that plaintiffs' hands are unclean because Don Walker violated the terms of Walker Chevrolet's franchise agreement by transferring Walker Chevrolet without prior notice to or approval from GM. Section 322A.12 requires a franchiser to give effect to a change in ownership or management of a franchisee's dealership "notwithstanding the terms, provisions or conditions of any agreement or franchise." This Court cannot conclude that plaintiffs' reliance on the law constitutes unclean hands.

## ORDER OF JUDGMENT

IT IS HEREBY ORDERED that an injunction be issued enjoining defendant General Motors Corporation to:

1) recognize Royce Buckwalter as dealer owner and dealer operator of Don Walker Chevrolet, Inc. until there is a change in the actual, principal ownership or management of Don Walker Chevrolet, Inc.;

2) name Royce Buckwalter as a dealer owner and dealer operator in Paragraph Third of the current Dealer Sales and Service Agreement between General Motors Corporation and Don Walker Chevrolet, Inc. until there is a change in the actual, principal ownership or management of Don Walker Chevrolet, Inc.; and

3) name Royce Buckwalter as dealer owner and dealer operator in Paragraph Third of any future Dealer Sales and Service Agreement between General Motors Corporation and Don Walker Chevrolet, Inc. until there is a change in the actual, principal ownership or management of Don Walker Chevrolet, Inc.