**Angela J. WOJAN, Plaintiff–Appellant,**

**v.**

**GENERAL MOTORS CORPORATION,
a Delaware Corporation,
Defendant–Appellee.**

**No. 87–1453.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 8, 1987.

Decided July 12, 1988.

Rehearing Denied Aug. 22, 1988.

John C. Ambrose, Ambrose & Cushing, Chicago, Ill., for plaintiff-appellant.

Diane I. Jennings, Lord Bissel & Brook, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff-appellant Angela Wojan appeals the district court's denial of her motions for the imposition of Rule 11 sanctions against the defendant, General Motors Corporation. We affirm, but on grounds other than those set forth in the district court's order.

## I.

On October 3, 1979, Angela Wojan was involved in a head-on automobile collision while travelling eastbound on a highway in the State of Michigan. She suffered severe facial injuries when her face struck the windshield of her 1974 Chevrolet Vega. On September 30, 1981, Wojan filed a products liability action against General Motors Corporation (GM) in the United States District Court for the Northern District of Illinois alleging that the Vega's negligently designed windshield rendered the automobile uncrashworthy.

Premising federal jurisdiction on diversity of citizenship between the parties, 28 U.S.C. § 1332, the plaintiff's complaint alleged (1) that GM was "a Delaware corporation, duly authorized to do business in the State of Illinois," and (2) the plaintiff was a citizen of the State of Michigan. On October 22, 1981, GM filed its answer, admitting that it was a Delaware corporation "licensed" to do business in Illinois but asserting a lack of knowledge as to the plaintiff's citizenship. GM's answer was silent as to its possible status as a citizen of the state of Michigan (GM's principal place of business).

The case then, as too often occurs, plodded along for some five years or more in the district court. In addition to the routine status hearings, pretrial conferences, and discovery procedures, during its first two years this case enjoyed two dismissals without prejudice for want of prosecution and a third dismissal on the merits for the plaintiff's failure to comply with discovery requests (although upon reconsideration the court sanctioned counsel rather than dismiss the case). In each instance the case was reinstated. On March 5, 1984, between the second and third dismissals, Wojan filed an amended complaint revising certain allegations (not pertinent to this appeal), but the jurisdictional paragraphs remained as originally pleaded in the complaint. Some two years later, on April 11, 1986, GM admitted the existence of diversity jurisdiction in its answer to the plaintiff's amended complaint, despite Wojan's Michigan citizenship and GM's obvious nexus with that state.

GM's answer to the amended complaint also included several affirmative defenses, including the defense of the plaintiff's contributory negligence. In particular, GM called attention to the fact that the Vega automobile, when sold, came equipped with an ignition interlock system which prevented the driver from engaging the car's engine until the lap and shoulder belts were secured. The defendant in its answer maintained that Wojan disconnected the seatbelt interlock system, modifying and bypassing the Vega's ignition system, thus permitting the driver to start the car without "buckling up." GM asserted that if Wojan had been wearing her seatbelt at the time of the impact, it would have been impossible for her to catapult forward and make contact with the allegedly defective windshield.

In response to GM's affirmative defenses, the plaintiff filed a motion to strike the defenses and a motion *in limine* attempting to exclude the reception of any evidence regarding the seatbelts and/or their use or non-use. Wojan argued that Michigan law prohibits the admission of such evidence for any purpose. GM countered that, regardless of the admissibility of the

seatbelt evidence as to the issue of the plaintiff's contributory negligence, the seatbelt evidence was admissible under Michigan law (assuming *arguendo* that the issue is governed by state substantive law rather than the Federal Rules of Evidence) to establish the crashworthiness of the vehicle.

On April 29, 1986, the district court denied the plaintiff's motion *in limine*, agreeing with GM's assertion that the seatbelt evidence was admissible and pertinent to the question of Vega's overall ability to withstand a crash. On May 29, 1986, the court denied the plaintiff's motion to reconsider its evidentiary ruling. Again, on January 8, 1987, the court reaffirmed its ruling that the seatbelt evidence was admissible to establish the vehicle's crashworthiness. But shortly thereafter, the district court discovered a Michigan case, *Hierta v. General Motors Corp.*, 147 Mich.App. 274, 382 N.W.2d 765 (1985), *remanded*, 429 Mich. 887, 416 N.W.2d 313 (1987) (decided on November 19, 1985, and released for publication on March 21, 1986), which the court understood as holding that evidence of seatbelt use or non-use is inadmissible to establish either the plaintiff's contributory negligence or the crashworthiness of the vehicle. Accordingly, the court reversed its position and ordered the exclusion of the evidence for all purposes.

On January 30, 1987, Wojan filed a motion requesting the imposition of Rule 11 sanctions against GM based upon GM's failure to cite the *Hierta* case to the trial judge. The plaintiff asserted that GM, as a defendant in the *Hierta* case, was well aware of the adverse precedent, and that GM's failure to disclose this directly adverse decision to the court constituted grounds for sanctions under Rule 11.

During a subsequent motion hearing dealing with Wojan's Rule 11 allegations, the case changed course. At the hearing, counsel for GM pointed out to the court that despite its earlier admission of the existence of diversity jurisdiction, it had now discovered a serious problem concerning the court's subject matter jurisdiction over the case (the problem being that federal jurisdiction was grounded on diversity of citizenship, although both parties were Michigan citizens). In light of this revelation, the court granted GM until February 6, 1987 to address the jurisdictional issue. On that date, GM filed a motion to dismiss the case for want of diversity jurisdiction, reporting for the first time that both Wojan and GM, with its principal place of business in Michigan, were citizens of the State of Michigan. On February 26, 1987, some five and a half years after the case was initially filed, the district court dismissed the case for want of diversity jurisdiction. The dismissal was without prejudice, thereby allowing the plaintiff to refile her lawsuit in the state court system.

Wojan nevertheless persisted, returning to the federal court on March 12, 1987, and filed two motions. The first requested that the court impose Rule 11 sanctions against GM for failing to deny diversity jurisdiction in its answer to the plaintiff's complaint. Secondly, Wojan requested the court to amend or set aside its order dismissing the case to retain jurisdiction over the two collateral Rule 11 motions for the purpose of determining whether GM should be sanctioned for its failure to deny diversity jurisdiction and/or its failure to disclose the *Hierta* case. The district court denied the plaintiff's motions, ruling that it "no longer [had] jurisdiction over [the] case." In this appeal Wojan insists that: (1) the district court had inherent power to impose Rule 11 sanctions notwithstanding its lack of subject matter jurisdiction over the underlying case; and (2) both GM's admission of diversity jurisdiction and its failure to disclose the *Hierta* case to the district court constitute sanctionable conduct pursuant to Rule 11.

II.

[1] The district court denied Wojan's motions for the imposition of Rule 11 sanctions against GM on the ground that its dismissal for lack of diversity jurisdiction prior to a ruling on the Rule 11 motions divested the court of "jurisdiction" to consider the motions. *See Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1153 n. 4 (5th

Cir.1985) (vacating the district court's imposition of Rule 11 sanctions because diversity jurisdiction was wanting). We disagree with the district court's reason for denying Wojan's Rule 11 motions as it confuses subject matter jurisdiction with the court's inherent "power" to engage in those judicial acts attendant to the presence of a live controversy before the court. Accordingly, we also reject the approach apparently taken by the Fifth Circuit in *Chick Kam Choo, supra.*

Recently, we observed that " '[j]urisdiction' is an all-purpose word denoting adjudicatory power. A court may have power to do some things but not others, and the use of 'lack of jurisdiction' to describe the things it may not do does not mean that the court is out of business." *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987). In *Szabo*, we held that not only does a court have the adjudicatory power to impose sanctions under Rule 11 after a Fed.R.Civ.P. 41(a)(1)(i) dismissal, but also regardless of whether a court actually has subject matter jurisdiction (either diversity or federal question), the court retains the power to consider a Rule 11 motion. *Id.* at 1078. This conclusion is founded upon the inherent authority of a court "to determine its jurisdiction and [to] engage in all the usual judicial acts [including imposing Rule 11 sanctions], even though it has no power to decide the case on the merits." *Id.* Our observation in *Szabo* that district courts possess inherent power over Rule 11 motions even under circumstances where jurisdiction over the underlying case is absent is consistent with the now well-established rule that the "inherent powers of federal courts are those which 'are necessary to the exercise of all others.' " *Roadway Express Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)). In a colorful illustration, *Szabo* explained the practical basis for the rule granting district courts the prerogative to impose sanctions even where the merits of the underlying case are no longer a concern to the court:

"Suppose the plaintiff files a suit, seeks a TRO, in the midst of the hearing asks to approach the bench, emits a Bronx cheer, punches the judge in the nose, and as the judge reaches for a handkerchief to stanch the bleeding tenders a dismissal under Rule 41(a)(1)(i). In reply to the inevitable citation for contempt of court, the plaintiff could not say: 'I wasn't there in the eye (nose?) of the law; nothing happened for which I am responsible; for "it is as if the suit had never been brought".' "

823 F.2d at 1079. Analogously, parties to a suit are not shielded from Rule 11 sanctions simply because the court lacks subject matter jurisdiction over the underlying case. Thus, although the district court had previously ruled that it was without subject matter (diversity) jurisdiction over the merits of Wojan's products liability action, we hold that the district court was not precluded from later exercising its inherent jurisdiction over the plaintiff's motions for the imposition of Rule 11 sanctions against GM, filed after GM's discovery of the jurisdictional defect.

Our holding today is in agreement with the Ninth Circuit's in *Trohimovich v. C.I.R.*, 776 F.2d 873 (9th Cir.1985). There, the court held that its lack of appellate jurisdiction did not preclude it from imposing sanctions under Fed.R.App.P. 38. The court held:

"Our inherent jurisdiction to condemn and punish the abusive conduct of litigants and their attorneys who appear before us is separate and apart from our jurisdiction to adjudicate the merits of their claims. In the exercise of our inherent jurisdiction we may, of course, inform ourselves of the nature and extent of apparent misconduct and we may condemn it as abusive. Our condemnation is not the exercise of our jurisdiction over the merits; it is an exercise of our inherent jurisdiction."

*Id.* at 875. Still more recently, in a similar case also dismissed for want of subject matter jurisdiction, the Ninth Circuit specifically stated: "The fact that the district court lacked jurisdiction to consider the merits of the case did not preclude it from

imposing sanctions." *Orange Production Credit Ass'n v. Frontline Ventures Ltd.,* 792 F.2d 797, 801 (9th Cir.1986). We are convinced that the holdings of the Ninth Circuit in *Trohimovich* and *Front Line Ventures Ltd.* are proper and necessary extensions of the district court's inherent authority to engage in those judicial acts attendant to the presence of a live controversy before the court, including the utilization of Rule 11 to discourage frivolous filings. This vested authority is in no way diminished if and when subject matter jurisdiction is ultimately found lacking in the underlying case.

As we noted in *Szabo:*

"An award of fees under Rule 11 is more like a sanction for contempt of court than like a disposition on the merits or even an award of costs. An award under Rule 11 is a 'sanction' for violating a rule of court. The obligation to answer for one's act accompanies the act...."

823 F.2d at 1079. Both the imposition of Rule 11 sanctions and the power of the court "[t]o fine for contempt ... are powers which cannot be dispensed with." *United States v. Hudson,* 11 U.S. (7 Cranch) at 34. Thus, litigants should be well aware that regardless of their determination as to the proper jurisdiction for the filing of a federal lawsuit, the federal courts will not hesitate to exercise their inherent prerogative to supervise the conduct of parties appearing before the court, and to impose Rule 11 sanctions in appropriate circumstances. *See, e.g., Hilgeford v. Peoples Bank,* 776 F.2d 176 (7th Cir. 1985) (per curiam) (upholding Rule 11 sanctions where federal question jurisdiction was absent); *Greenberg v. Sala,* 822 F.2d 882 (9th Cir.1987) (per curiam) (affirming district court's denial of Rule 11 sanctions after a Rule 41(a) voluntary dismissal); *Hasty v. Paccar, Inc.,* 583 F.Supp. 1577 (E.D.Mo.1984) (entertaining a motion for Rule 11 sanctions where the plaintiff completely failed to produce evidence to establish the court's personal jurisdiction over the defendant). Contra *Chick Kam Choo,* 764 F.2d at 1153 n.4. Consequently, we hold that the district court could and should have exercised its inherent jurisdiction for the purpose of ruling on the merits of Wojan's Rule 11 motions, despite the fact that the court lacked subject matter jurisdiction over the underlying case.

■ Although GM does not challenge the district court's inherent jurisdiction over the plaintiff's sanctions motions, GM maintains that Wojan's motion to alter or amend the February 26, 1987 order dismissing the case was untimely, thus barring the district court's review in any event. We reject GM's argument. On January 30, 1987, Wojan filed her first Rule 11 motion and at the motion hearing GM directed the court's attention to the jurisdictional problem. On February 6, 1987, GM moved to dismiss the case for lack of diversity jurisdiction, which the court granted on February 26, 1987. Fourteen days later, on March 12, 1987, Wojan filed her motion to amend or alter the dismissal order and also requested sanctions for GM's failure to deny diversity. GM, construing Wojan's motion as a Rule 59(e) motion, asserts that Wojan filed the motion past the 10–day time limit provided for in Rule 59(e). We need not rule on the question of whether a motion for sanctions under Rule 11 is itself a motion to alter or amend a judgment under Rule 59(e). GM overlooks Fed.R.Civ.P. 6(a), which provides in pertinent part that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." The 14–day period between February 26, 1987 and March 12, 1987 includes two Saturdays and Sundays. Excluding these days from the relevant time period, Wojan timely filed her motion, assuming *arguendo* that it was a motion under Rule 59(e). Thus, Wojan's Rule 11 motions were properly before the district court.

### III.

Having determined that the district court had the authority to decide Wojan's Rule 11 motions notwithstanding the dismissal of the cause for want of subject matter jurisdiction, we nonetheless affirm the court's denial of the motion. Generally speaking, " 'whether the decision to award sanctions

was appropriate under the factual background of the case ... is subject to review for abuse of discretion.' " *In re Ronco, Inc.*, 838 F.2d 212, 217 (7th Cir.1988) (quoting *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir.1987)). But in this case *Szabo*, 823 F.2d at 1084, and *Local 232, Allied Industrial Workers v. Briggs & Stratton*, 837 F.2d 782, 788 (7th Cir.1988), control because the district court did not make express findings regarding the merits (or lack thereof) of Wojan's Rule 11 motions. In both *Szabo* and *Briggs & Stratton*, we implicitly held that where "the reasons for denying a colorable motion are apparent on the record," we are free to affirm the denial of the Rule 11 motion without remanding the case to the district court for further factual findings. *See Briggs & Stratton*, 837 F.2d at 788 (quoting *Szabo*, 823 F.2d at 1084). *Cf. Hays v. Sony Corp.*, 847 F.2d 412 (7th Cir.1988) (the court of appeals cannot itself *award* fees under Rule 11). This procedure prevents the very real "danger of creating a whole new cottage industry of sanctions." *Szabo*, 823 F.2d at 1086 (Cudahy, J., concurring in part and dissenting in part). Thus, we determine whether reasons for denying Wojan's Rule 11 motions are apparent on the record now before us.

### ·A.

Wojan initially asserts that GM violated Rule 11 in failing to deny diversity jurisdiction in its answer to Wojan's complaint. On the other hand, GM apologetically notes that "both counsel were at fault for failing to ascertain that diversity [jurisdiction] did not exist." GM further suggests that a party, like Wojan, certainly is not entitled to sanctions when its inadequate pleadings led to the jurisdictional problem at hand. The district court, too, accepted part of the blame, noting its failure to inquire, *sua sponte*, into its subject matter jurisdiction. We conclude that all parties to the litigation contributed to the five and a half years it took this case to proceed through the trial court.

■ Our review of the record takes us back to when Wojan filed her complaint on September 30, 1981. The complaint alleged, *inter alia:* (1) that Wojan was a citizen of the state of Michigan, and (2) that GM was "a Delaware corporation, duly authorized to do business in the state of Illinois." Wojan never amended these jurisdictional allegations, assuming that they sufficiently alleged the existence of diversity jurisdiction. We observe that a corporation is considered a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c); *see also Rush Presbyterian St. Luke's Medical Center v. Safeco Insurance Co.*, 825 F.2d 1204, 1205 (7th Cir. 1987); *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.1986); *Casio, Inc. v. S.M. & R. Co. Inc.*, 755 F.2d 528, 529 (7th Cir.1985); *Celanese Corp. v. Vandalia Warehouse Corp.*, 424 F.2d 1176, 1178 (7th Cir.1970). "Moreover, the party alleging jurisdiction must support its allegation with competent proof of jurisdictional facts." *Western Transportation Co. v. Couzens Warehouse & Distributors, Inc.*, 695 F.2d 1033, 1038 (7th Cir.1982). In this case, Wojan failed to allege the location of GM's principal place of business; rather, the plaintiff merely noted in her complaint (and amended complaint) that GM was duly "authorized" to do business in Illinois. GM's initial answer didn't help matters any, admitting that it was "licensed" to do business in Illinois. But being "licensed" or "authorized" to do business in a state does not necessarily make a corporation, like GM, a citizen of that state because besides the state of incorporation, a corporation is only a citizen of the state in which it has its *principal* place of business (or its "nerve center"), not every state in which it does business. *See Kanzelberger*, 782 F.2d at 777. Wojan was obligated to ensure that her jurisdictional allegations rested on a sound factual basis. She could not merely rely on GM's rather late and erroneous admission of diversity jurisdiction. We have held that "when one corporation sues another and the only basis of federal jurisdiction is diversity, the plaintiff must allege both the state of incorporation *and* the state of principal place of business for each corporation." *Casio, Inc.*, 755 F.2d at 529–

30 (emphasis added). We see no reason for dispensing with this rule where an individual plaintiff (or non-corporate plaintiff) sues a corporation. We so hold. Although we do not conclude that Wojan's pleadings were frivolous, we note they come perilously close. Given the scale of GM's operations and Detroit's worldwide reputation as the "Motor City," plaintiff's counsel, with the aid of a little common sense, should have been aware of the potential that GM had its principal place of business in Michigan (where plaintiff resided). Indeed, had the plaintiff's counsel done even a minimal amount of research on the issue of GM's principal place of business, counsel would have discovered that at the time of filing Wojan's complaint, at least one prior case involving GM provided some guidance. *See Leve v. General Motors Corp.*, 246 F.Supp 761, 764 (S.D.N.Y. 1965) (holding that GM "met its burden of proof that its principal place of business is not located in New York, and while it is not necessary to the decision, the facts clearly show that its principal place of business is in Michigan"). Additionally, before GM filed its answer to Wojan's amended complaint, another case had been published which should have clearly red-flagged the plaintiff. *See Buckwalter Motors, Inc. v. General Motors Corp.*, 593 F.Supp. 628 (S.D. Iowa 1984) (observing that GM "is a Delaware corporation with its principle [sic] place of business in Detroit, Michigan"). Although we recognize that a corporation's principal place of business may change at any time, (in the instant case a change in GM's principal place of business would obviously result in world-wide media coverage), a skilled practitioner should have been alerted to the probable jurisdictional problem in this case and acted accordingly. We observe that even with large-scale corporations such as GM, counsel is obligated to investigate and verify all aspects of his claim, and in particular the defendant's principal place of business. *See, e.g., S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.*, 842 F.2d 946 (7th Cir.1988) (imposing sanctions against a plaintiff for the lack of investigation into the corporation's state of incorporation). Litigants, particularly those who bear the burden of proof, must be prepared to establish the existence of jurisdiction or at the least have made steps toward that goal. Failing to do so, they must be prepared to face sanctions for their dereliction.

Nevertheless, in this case we hasten to point out that Wojan does not bear the entire blame as neither party is without fault. In light of Wojan's questionable jurisdictional allegations (limited to alleging that GM was "duly authorized to do business in Illinois" rather than asserting that GM's *principal place of business* was in Illinois) and the existence of case law (which was readily accessible to GM since it was a defendant in both the *Leve* and *Buckwalter* cases) supporting the conclusion that GM's principal place of business was in Michigan, we are stunned that GM's counsel neglected to move for dismissal within a few weeks of the filing, much less waiting five and a half years.

Our examination of the record reveals that GM's counsel "discovered" the lack of diversity jurisdiction in January 1987 as follows:

"... one of the young lawyers in the firm [Lord, Bissell & Brook] was doing some research work on the ... points that had been raised [regarding the seatbelt evidence] ... and he casually asked me, this young lawyer, he said, 'Where does Miss Wojan live?' and I said, 'In Michigan,' and he said, 'Well, then why is there diversity jurisdiction?'

That question struck me like a brick, because the fact of the matter is that my client's principal place of business is and has been in the state of Michigan, Miss Wojan lived in the state of Michigan, and I was stunned by the question."

Transcript of Proceedings, January 30, 1987. We note that if counsel's conduct remained the same in the face of a plaintiff's properly pleaded jurisdictional allegations, we wouldn't hesitate to affirm sanctions imposed for conduct similar to that of counsel for GM. Today, when demands on judicial time are at a premium, our effort, time and knowledge could be much better spent on those cases we have the jurisdic-

tion to hear. In any event, we are confident, and it is apparent on the record before us, that Wojan's request for the imposition of Rule 11 sanctions against GM for failing to dispute diversity jurisdiction would have been denied by the district court. Thus, we affirm the district court's order denying Wojan's Rule 11 motion based on GM's failure to deny diversity jurisdiction.

## B.

Wojan further contends that GM's failure to disclose the *Hierta* case to the district court constitutes a violation of Rule 11. Plaintiff argues that under *Hierta*, seatbelt evidence is inadmissible to establish either the plaintiff's contributory negligence of the crashworthiness of the Vega; and thus, is directly adverse to the position GM articulated to the court. Wojan maintains that GM had a duty to the court to disclose the existence of such an adverse case. Initially, GM responds that Wojan's counsel also failed to bring the *Hierta* decision to the attention of the court. GM further points out that, assuming *arguendo* the applicability of Michigan law, under Michigan law the *Hierta* case, which was on appeal to the Michigan Supreme Court, could not be cited as precedent. *See People v. Phillips*, 416 Mich. 63, 330 N.W.2d 366, 371 (1982); *Martin v. Joseph Harris Company Inc.*, 767 F.2d 296, 303 n. 8 (6th Cir.1985) (citing *People v. Phillips*). Although it is clear that "lawyers owe a duty of candor to the tribunal," *Beam v. IPCO Corp.*, 838 F.2d 242, 249 (7th Cir.1988), it appears on this record that GM's want of candor in this instance, while suspect, does not rise to the level necessary to require the imposition of sanctions. The district court did note that it "would have preferred to have been advised of the existence of [the *Hierta*] case," regardless of its precedential value in Michigan. The court, however, specifically stated that it "would not under any circumstances have sanctioned" counsel for GM. We recently held that " 'the *decision* whether there has been a [Rule 11] violation is a judgment call' ... better left to the discretion of the district court who has a bird's eye view of

'the actual positions' taken by the litigants." *Flip Side Productions, Inc. v. Jam Productions, Inc.*, 843 F.2d 1024, 1038 (7th Cir.1988) (citations omitted) (emphasis in original). Our examination of the record convinces us that the district court would not have imposed sanctions under the circumstances; thus, we hold that the district court would have found Wojan's Rule 11 motion based on GM's failure to disclose the *Hierta* case to be without merit.

## IV.

We affirm the order of the district court denying Wojan's motion for the imposition of Rule 11 sanctions against GM.

No costs.