Anthony Wesley LAINE, et al., Plaintiffs,

v.

MORTON THIOKOL, INC., Defendant.

No. 88 C 7834.

United States District Court, N.D. Illinois, E.D.

Feb. 24, 1989.

Edwin B. McLean, Phoenix, Ariz., for plaintiffs.

Catherine E. Tinker, John W. Adler, Myra L. Markey, Adler, Kaplan & Begy, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On January 30, 1989 this Court issued its oral ruling granting the motion of Morton Thiokol, Inc. ("Morton") to transfer this action to the United States District Court for the District of Utah under 28 U.S.C. § 1404(a) ("Section 1404(a)"). At that time Morton's counsel indicated an intention to seek recovery of attorneys' fees and expenses stemming from the ill-conceived effort of Anthony and Donna Jean Laine (collectively "Laines") and their counsel to sue here in Illinois despite the total lack of connection between Laines' asserted causes of action and this forum. On January 30 Morton filed such a motion under Fed.R. Civ.P. ("Rule") 11 and 28 U.S.C. § 1927 ("Section 1927"), and Laines' counsel has filed a responsive memorandum.

Because that response has challenged this Court's jurisdiction to issue the orders sought by Morton here, that issue will of course be addressed first. This opinion will then turn to the merits of the motion.

As for the first basis for the statement by Laines' counsel that "[t]his Court is without authority" to grant the relief sought by Morton, counsel points to a January 10 minute order by this Court's colleague Honorable George Marovich reading:

Ordered that case no. 88 C 7834 now pending before Judge Shadur and the above instant case are consolidated for purposes of resolution of venue and motions to dismiss. Motions filed by defendants represented by Attorney Tinker in both cases to apply to the amended complaint.

Counsel's position based on that order stems from an understandable misapprehension of the applicable rules and procedures in this District Court.[1]

Under our General Rule 2.31, which covers reassignments of cases based on relatedness, no individual judge makes the actual decision for reassignment—that is the function of our Executive Committee (General Rule 2.31(d)). Judge Marovich's order, as that of the prospective assignee judge, would serve only as a recommendation to the Executive Committee (*id.*). In this instance the Executive Committee issued no such order of reassignment (indeed, on reconsideration of the matter Judge Marovich ultimately decided not to seek reassignment). Accordingly there is no question as to this Court's authority to act on the current motion, just as there was no question as to its authority to enter the Section 1404(a) transfer order in this case.[2]

As for any claimed lack of authority stemming from the fact that this action has already been transferred under Section 1404(a), at least two recent decisions from our Court of Appeals compel the rejection of that argument. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073,

---

1. No criticism of Laines' lawyer is implied by what is said in the text. That misunderstanding is entirely understandable in light of the language of the January 10 minute order, which was perhaps itself a product of a misunderstanding of the relevant procedures by Judge Marovich's minute clerk.

2. In fact, in the sense of true "authority"—of jurisdiction as such—this Court would technical-

ly have had such power to act even had the case been reassigned from its calendar (as it was not). Any such judicial action would certainly have been both irregular and unseemly, and would never have been indulged in knowingly by this Court or any of its colleagues, but the internal District Court rules and procedures do not serve either to confer or to divest District Judges of *jurisdiction*.

1076–79 (7th Cir.1987) held a District Court retains power to consider a Rule 11 motion and impose sanctions after a plaintiff's voluntary dismissal under Rule 41(a)(1)(i) (a dismissal that of course ends the case itself in the District Court, just as effectively as does a Section 1404(a) transfer to another court). Even more recently *Wojan v. General Motors Corp.*, 851 F.2d 969, 971–73 (7th Cir.1988) drew heavily on *Szabo* to hold that such inherent Rule 11 power remains even where subject matter jurisdiction over the underlying case was wholly absent in the first place.[3] Those decisions are all of a piece with our Court of Appeals' frequent teaching that Rule 11 motions are wholly independent of the merits, so that (for example) (1) the existence of such a motion does not deprive the ruling on the merits of finality (and hence appealability) and (2) the Rule 11 decision is itself independently appealable (see, e.g., *Szabo*, 823 F.2d at 1078).

Accordingly the contended-for "authority" questions pose no problem at all. This Court has jurisdiction to decide the Rule 11–Section 1927 motion. This opinion turns then to the substance of that motion.

■ When Laines first brought this action (initially assigned to the calendar of this Court's colleague Honorable Prentice Marshall), they sued not only Morton but three individual employees of Morton's Space Division, together with another corporate defendant affiliated with Morton. Laines' lawyer asserted diversity jurisdiction in the Complaint even though it was unquestionably lacking (both Laines and the Morton affiliate shared Arizona citizenship). That flaw, though reflective of a level of counsel's inattention to legal principles that continued to permeate the entire history of the case before this Court, was not fatal, however: Laines also asserted federal question jurisdiction under the antitrust laws and RICO, so the claims as to which diversity was lacking could be viewed as pendent state-law claims.

But as to the federal-question claims (as well as the pendent state-law claims) defense counsel promptly brought to the attention of Laines' counsel, by a motion to dismiss, the equally obvious venue and personal jurisdiction problems presented by the lawsuit. Laines resided in Arizona, so that no venue here in Illinois could be asserted in terms of plaintiffs' residence. Nor is there any way in which the claims asserted by Laines could be said to have arisen here. And as for defendants' residences, only Morton (because of the Illinois location of its corporate headquarters) could be said to reside here. All three individual defendants and the Morton corporate affiliate resided far away in Utah—at the situs of the cause of action itself—and none was even arguably subject to personal jurisdiction here (more of this later).

When this Court inherited the case from Judge Marshall's calendar, it set a prompt status hearing. At that time it (like defense counsel) was quick to point out all those problems to Laines' lawyer.[4] In the course of its oral statement at that time, it also called to counsel's attention that although both the antitrust laws and RICO are sometimes spoken of as permitting nationwide service of process, the plain language of those statutes (15 U.S.C. § 4 and 18 U.S.C. § 1965(a) and (b), respectively) requires—as a prerequisite to bringing persons such as the individual defendants into this District Court—the same "ends of justice" balancing that is called for by Section 1404(a) transfer motions. Though this Court does not have a transcript of that status hearing, its retained notes indicate it concluded by saying essentially this:

> But I see no predicate for haling three individual Utah citizens and residents into an Illinois district court, where *Utah* is where the complained-of conduct occurred and Illinois has no connection to this action at all. That is forum-shop-

---

3. Parity of reasoning obviously extends that ruling to the Section 1927 sphere as well. Motions under Section 1927 draw equally on the courts' inherent power (as to which the contempt-of-court analogy drawn in *Szabo*, 823 F.2d at 1079 applies with equal force).

4. Shortly before that status hearing Laines' lawyer had filed a voluntary dismissal as to Morton's affiliated corporation, thus eliminating the flaw as to diversity of citizenship. But all the other difficulties remained intact.

ping with a vengeance, and it ought to be discouraged with all the vigor at a court's disposal.

In the face of that clear warning, Laines' counsel then dropped the three individual defendants and retained the action against Morton alone. That narrowed the issue to the inevitable Section 1404(a) transfer, which Morton promptly sought and this Court just as promptly granted. Though venue was not now a problem given Morton's corporate headquarters here, all the Section 1404(a) considerations weighed very heavily in favor of transfer to Utah: Morton's Illinois headquarters location was really not a meaningful consideration at all, where the acts relating to Laines' claim were centered in Utah and where all the other relevant factors pointed to the same forum—something on which this Court of course elaborated in its oral ruling granting the transfer.

Nothing in Laines' response to the motion gives any reason for denying it. If anything, Laines' counsel has really aggravated the situation by advancing a nonsensical basis for jurisdiction over the three individual defendants. Laines Mem. 2–3 says as to those defendants—despite there having been nothing at all to indicate the slightest Illinois involvement of any of the individuals:

> As a very high ranking manager in Morton Thiokol, Thompson was transacting affairs in and had agents in the Northern District of Illinois insofar as that is the district of residence of Morton Thiokol, Inc.[5]

Similarly untenable "agency" and "transacting business" statements are made again at Mem. 8, but such ipse dixit assertions gain nothing by repetition.

There is no need to rehearse the Rule 11 standards so often repeated by our Court of Appeals and by this Court (see, e.g., *Szabo,* 823 F.2d at 1080; *National Union Fire Insurance Co. of Pittsburgh v. Continental Illinois Corp.,* 113 F.R.D. 637, 638–39 (N.D.Ill.1987)). Laines' counsel plainly fail Rule 11's objective test (and the corresponding Section 1927 standard; see, e.g., *In re TCI, Ltd.,* 769 F.2d 441, 445–46 (7th Cir.1985)) in all the areas of conduct as to which Morton has made its modest request. Morton does not seek to mulct Laines or their counsel by shifting to them all of the more than $25,000 in fees and costs it has incurred from the beginning of the litigation. Instead it asks for (1) out-of-pocket travel expense aggregating $870.41, required to meet with the individual defendants because of Laines' ill-conceived joinder of those defendants in an Illinois-based action, and (2) the amount of time Morton's counsel had to focus on the issues as to which Laines' counsel was plainly in violation of Rule 11 and Section 1927 (that time aggregated 23 hours at $120 per hour and 1.5 hours at $80 per hour).

This Court finds both the time spent and the hourly rates reasonable, and it finds the product of hours-times-rates represents a reasonable fee for the services involved. It also finds the requested out-of-pocket expenses were reasonably incurred and would not have been incurred but for the sanctionable conduct. Finally, it determines that the amount must be paid by Laines' counsel Edwin McLean, Esq. ("McLean") without any right of reimbursement from Laines, unless McLean were to demonstrate attributability of the sanctionable conduct (in whole or in part) to Laines themselves.[6] Accordingly McLean is ordered to pay the sum of $3,750.41 to Morton on or before March 10, 1989.[7]

---

5. [Footnote by this Court] This same statement is made as to each of the other two individual defendants at Laines Mem. 3.

6. Section 1927 provides for sanctions only against lawyers. Rule 11 provides for sanctioning the signer of the document or documents violating the Rule or "a represented party, or both." Under the circumstances here, the resolution of the liability issue in the manner stated in the text appears most appropriate.

7. Morton has not enlarged the requested sanctionable amount to include the fees-on-fees issue (time spent in preparing the current motion), another factor supporting this Court's determination of reasonableness. To minimize that further expenditure of time, this Court apprised both sides' counsel that no reply memorandum from Morton was necessary after this Court had reviewed the first two memoranda.