**DEWINDT CORP., Plaintiff,**

v.

**SCOTTSDALE INSURANCE CO., Defendant.**

**No. 99 C 6983.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 21, 2000.

cited); 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297 at 616 (2d ed.1990).

Kenneth A. Michaels, Jr., Kenneth Michaels & Associates, Chicago, IL, for DeWindt Corp., plaintiff.

Patrick Charles Dowd, John Thomas Chute, Dowd & Dowd, Ltd, Chicago, IL, for Scottsdale Ins. Co., defendant.

## MEMORANDUM OPINION
## AND ORDER

ZAGEL, District Judge.

This is a coverage dispute between an insured corporation, DeWindt Corporation, and its insurer, Scottsdale Insurance Co., over Scottdale's refusal to defend DeWindt in an arbitration proceeding brought against it by a third party. I previously denied plaintiff DeWindt's motion to strike the defendant Scottsdale's affirmative defenses. DeWindt moves to vacate and reconsider that ruling, and Scottsdale moves for summary judgment.

DeWindt asks me to vacate my ruling, arguing that the case was not properly assigned to me at the time that I ruled and that it was unfairly prejudiced as a result. An unfortunate and seemingly unique set of circumstances here resulted in my ruling on the motion to strike before the parties knew the case had been reassigned to my calendar. The case was originally assigned to Judge Marovich, who set the briefing schedule on the motion to strike. While the parties were briefing the motion, Judge Marovich took senior status and reduced his case load. As part of that reduction, the Executive Committee reassigned this case to me on February 1, 2000. Due to a computer glitch (discovered by an internal court investigation), the reassignment order was not docketed at that time, and the parties were not sent notice of the reassignment. So I knew of the reassignment, but they did not. Briefing was complete on the motion to strike on February 17, 2000, and I issued my ruling by written order on March 21, 2000. In the meantime, the parties had been in communication with Judge Marovich's chambers, believing he was still the judge on the case. On March 8, 2000, DeWindt motioned up for presentment on March 21, 2000, a motion to supplement its reply brief on the motion to strike. Then on March 16, 2000, the parties jointly notified Judge Marovich's minute clerk that settlement negotiations were ongoing and requested a settlement conference with a magistrate judge, which she said she would arrange. Presentment of the motion to supplement was moved to April 11, 2000. The parties also asked that Judge Marovich delay his ruling on the motion to strike until after the settlement conference, and she said that he would do so. The parties first learned of the case reassignment upon receipt of my written order denying the motion to strike, a ruling that understandably derailed the settlement negotiations. A subsequent inquiry brought the docketing error to light, and the reassignment order was entered on the court's docket on March 27, 2000.

Once the reassignment order was signed by the Executive Committee on February 1, 2000, the case was properly before me. All judges of this court share jurisdiction over cases properly before the Northern District of Illinois, and assignment matters

are a matter of court rules. *See* 28 U.S.C. § 137; LR 40.1; *see also Laine v. Morton Thiokol*, 124 F.R.D. 625, fn. 2 (N.D.Ill. 1989).

But, this case is not without its inequities, and, as I see it, the real issue here is whether a party has a right to know which judge of a multi-judge court is hearing its case, or in the case of a multi-judge court without individual dockets, hearing its motion.

Knowing one's assigned judge often is useful in devising litigation strategy and crafting one's legal arguments, as judges differ in demeanor and legal philosophy. This is a sensitive issue for multi-judge courts, of course, for they, along with most lawyers, believe that case outcomes should be the same no matter the judge assigned. Indeed the vast majority of case outcomes in trial courts are the same no matter what judge is assigned, because the correct decision is obvious to anyone without a stake in the outcome. Apart from a tiny number of outcomes that might be different from trial judge to trial judge, the most significant differences from judge to judge are found in the way the court processes the cases. The pace of litigation, the nature of the discovery, the degree to which schedules are honored are all matters within control of the trial judge. While none of these things necessarily affects a ruling on a motion or a verdict after trial, the way a judge controls process may have significant economic and personal effects on the litigants. Some rules and legislation are designed to reduce these differences, but they cannot be eradicated without creating rigid procedures, a result against which lawmakers have turned their faces. In the end, when differences exist, they are an unintended consequence of large court dockets and do not create an entitlement for a party to know the judge assigned to its case.

More important to this case is the simple idea that a party may want to know its assigned judge so that informal communication with him or her may occur. The communication that occurred here is routine in many chambers. It is not unusual for the parties to brief a dispositive motion, and for those arguments to spark settlement discussions, as often the briefing is the first chance the parties have to see each other's arguments laid out in full. At that point, if the parties informally request that he or she do so, many a judge will agree not to rule on the motion while settlement attempts are made. I routinely grant such requests, and would certainly have done so in this case, had the request been made to me.

Of course, had the parties filed a formal motion to withdraw the motion to strike without prejudice to its being filed again at a later date, that motion presumably would have been granted (by either Judge Marovich or myself) and entered on the docket sheet, and the ruling could not subsequently have been entered.[1] No formal motion was made, however. I do not believe parties have an inherent right to communicate informally with the judge—courts are set up with formal mechanisms to avoid just these kinds of problems. That is not to say that I blame the parties at all for the mix-up in this case, but I do not believe the circumstances of this case require me to vacate the opinion as a matter of law.

Even were I to try to create an equitable remedy, taking into consideration the blamelessness of the litigants and the adverse impact the ruling had on their ability to litigate the case as they choose, there is none to be had. As a practical matter, the genie is out of the bottle at this point. A district court judge has weighed in on the merits of the motion, and that opinion, even if vacated, will affect settlement negotiations between the parties in this case.

---

**1.** Given the docketing error and the misunderstanding by Judge Marovich's minute clerk, it is doubtful that I would have received notice of the motion prior to preparing the ruling. Nonetheless, once prepared, my ruling could not have been entered on the docket, as the underlying motion would already have been withdrawn.

So it is difficult to devise a proper equitable remedy. DeWindt asks me to vacate the ruling, but that would not achieve what it really wants and deserves: the genie back in the bottle. Thus, as the motion was properly before me when I ruled, I let it stand.

■ Next, DeWindt asks me to reconsider the merits of the motion. I will reconsider my ruling only if I patently misunderstood a party, made a decision outside the adversarial issues presented to me, made an error not of reasoning but of apprehension, or if there is a controlling or significant change in the law or facts since original submission of the issue. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). Many of DeWindt's arguments rehash old issues; I address only those that present grounds for reconsideration. I also consider the additional authority DeWindt sought to file prior to my earlier ruling.

That additional authority, *Willis Corroon Corp. v. Home Ins. Co.*, 203 F.3d 449 (7th Cir.2000), is inapposite and does not change my decision. In *Willis Corroon,* the Seventh Circuit found estoppel where an insurer mishandled a defense it conducted for its insured under a reservation of rights. The case is distinguishable in that the source of the estoppel was the insurer's mishandling of the defense it chose to undertake, not, as is the case here, the total failure to undertake a defense or to file a declaratory action. *Willis Corroon* does not speak at all to the issue in this case, which is whether a duty to defend exists at all.

■ DeWindt also argues that I misconstrued the factual allegations of the underlying arbitration dispute and that a potential for coverage did, in fact, exist, thereby giving rise to a duty to defend. It argues that the dispute in the arbitration proceeding arose initially from an elevator accident, which caused bodily injury to its subcontractor's employees, and that that is enough to bring the arbitration potentially within the ambit of policy coverage. But the relief sought in the arbitration, as represented in DeWindt's complaint in this action, was for payment due on the subcontractor contract for work not performed because of the accident. That is a suit for contractual damages, and regardless of the reason for the subcontractor's breach, under the express terms of the insurance policy, contract disputes are excluded from the policy coverage. Scottsdale therefore had no duty to defend.[2] *See Kim v. State Farm Fire & Cas. Co.*, 312 Ill.App.3d 770, 245 Ill.Dec. 448, 728 N.E.2d 530 (2000) (failure to defend under reservation of right, or seek declaratory judgment, did not estop insurer from raising exclusions as a defense, since policy expressly excluded coverage for such claims).

DeWindt next argues that there are genuine issues of fact as to what facts were alleged as the basis of the underlying arbitration proceeding. Illinois courts consider the question of duty to defend by comparing the complaint of the underlying action and the insurance policy, an inquiry made difficult here by the absence of a written complaint in the underlying arbitration dispute. Recognizing this difficulty in my earlier order, I relied on the plaintiff's characterization of the arbitration proceeding in its complaint and found that, as characterized, it did not give rise to a duty to defend. In an abundance of caution and not wanting poor draftsmanship of this complaint to thwart an otherwise valid suit, I grant DeWindt leave to amend its complaint to correct any mischaracterization of the scope of the arbitration proceeding. If the amended complaint creates a material issue of fact on the scope of the underlying dispute at the time the proceeding was initiated, I will then consider evidence on the issue.

---

2. Scottsdale took a serious gamble in choosing not to defend DeWindt in the arbitration or to file a declaratory judgment action, but that is a gamble it is entitled to take under the law.

Accordingly, I deny DeWindt's omnibus motion to reconsider and vacate my order of March 21, 2000 [19–1]. Having considered the merits of the omnibus motion, I deny DeWindt's initial motion to reconsider and vacate my order of March 21, 2000 as moot [14–1]. I permit DeWindt fourteen days from entry of this order on the court's docket to file an amended complaint, and I enter and continue Scottsdale's motion for summary judgment [15–1].